# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## AFT MICHIGAN V STATE OF MICHIGAN

Docket No. 148748. Argued October 9, 2014 (Calendar No. 2). Decided April 8, 2015.

AFT Michigan and numerous other labor organizations representing public school employees brought an action in the Court of Claims against the state of Michigan, the State Treasurer, the Public School Employees' Retirement System, and others, asserting various constitutional challenges to 2012 PA 300, which had amended the Public School Employees Retirement Act, MCL 38.1301 *et seq*. In particular, the act added MCL 38.1391a(5), which enables current public school employees to opt out of retiree healthcare and thereby avoid paying the 3% retiree healthcare contributions required by MCL 39.1343e, a statute enacted in 2010 and subsequently struck down by the Court of Appeals as violating the Takings Clauses, Contracts Clauses, and Due Process Clauses of the Michigan and United States Constitutions in *AFT Mich v Michigan*, 297 Mich App 597 (2012). It also added MCL 38.1391a(8), which provides a separate retirement allowance for public school employees who elect to pay the 3% contributions but subsequently fail to qualify for retiree healthcare benefits. Furthermore, the act altered the manner in which public school employees accrue pension benefits. It increased the amount that all current public school employees must contribute in order to continue accruing pension benefits at the existing rate. MCL 38.1343g(1)(a) requires members of the retirement system's Basic Plan (who had not previously contributed to their pensions) to contribute 4% of their salaries to the retirement system for that purpose. MCL 38.1343g(1)(b) requires members of the retirement system's Member Investment Plan to contribute 7% of their salaries to the system. Employees who decline to make the additional contributions will accrue future pension benefits at a lower amount. Finally, MCL 38.1384b(3) and (4) allow employees to discontinue accruing future pension benefits altogether and participate in a 401(k)-style Tier 2 retirement account. The act, however, altered only the manner in which employees accrue pension benefits arising after the act's effective date. It had no effect on pension benefits previously accrued. Plaintiffs argued that the act violated the Takings Clauses, Const 1963, art 10, § 2 and US Const, Ams V and XIV; that the act impaired the obligation of contracts in violation of the Contracts Clauses, Const 1963, art 1, § 10 and US Const, art I, § 10, cl 1; and that the act violated the Due Process Clauses, Const 1963, art 1, § 17 and US Const, Am XIV, § 1. The Court of Claims, Rosemarie E. Aquilina, J., ruled in favor of defendants on all claims, and plaintiffs appealed. The Court of Appeals, SAAD, P.J., and K. F. KELLY, J. (GLEICHER, J., concurring), affirmed, concluding that contributions to the retiree healthcare program would be made voluntarily and were therefore free of constitutional infirmity and that the act did not affect any obligation of contracts between the state and public school employees with regard to the pension modification because the state

is not obligated to provide future pension benefits to public school employees. 303 Mich App 651 (2014). Plaintiffs sought leave to appeal, which the Supreme Court granted. 495 Mich 1002 (2014).

In an opinion by Justice MARKMAN, joined by Chief Justice YOUNG and Justices KELLY, ZAHRA, MCCORMACK, and VIVIANO, the Supreme Court *held*:

2012 PA 300 does not violate the Takings Clauses, the Contracts Clauses, or the Due Process Clauses of the Michigan and United States Constitutions.

1. Const 1963, art 10, § 2 and the Fifth Amendment, as applied to the states through the Fourteenth Amendment, prohibit the government from taking private property for public use without providing just compensation to the owner. The term "taking" encompasses governmental interference with rights to both tangible and intangible property. However, governmental action creating general burdens or liabilities, i.e., merely requiring citizens to expend monies for valid public purposes and expenditures, typically will not form the basis for a cognizable taking claim. For there to be a compensable taking, the government must assert its authority to seize title or impair the value of property. This does not occur if the owner voluntarily relinquishes the property to the government. The retiree healthcare contributions are not mandatory. Public school employees may entirely opt out of the retiree healthcare program and thereby avoid making the salary contributions. The state is not obligated to provide publicly subsidized healthcare to public school employees, but has affirmatively chosen to do so, and it is therefore entirely reasonable to request that any eligible employee who desires the benefit help pay for it. Accordingly, 2012 PA 300 does not take private property in violation of the Takings Clauses.

2. Assuming, without deciding, that the United States Supreme Court's doctrine of unconstitutional conditions applies in the present case, the state has also not attached an unconstitutional condition to the receipt of a governmental benefit. Plaintiffs argued that the act requires public school employees seeking access to retiree healthcare to relinquish in exchange their right to demand just compensation if they eventually fail to qualify for retiree healthcare. Individuals generally may voluntarily waive their constitutional rights. Individuals also have no constitutional right to receive any particular governmental benefits. Under limited circumstances, however, the government may be prevented from denying a benefit to an individual because that person has exercised a constitutional right. This is known as the doctrine of unconstitutional conditions. The fundamental principle underlying the doctrine is that the government cannot attach conditions to governmental benefits that effectively coerce individuals into relinquishing their constitutional rights. The United States Supreme Court has held that a governmental benefit given in exchange for a seemingly voluntary transfer of private property interests to the government may violate the doctrine of unconstitutional conditions if the condition lacks a nexus between the burden that the condition imposes on the property owner and the government's interest advanced by the condition or if the burden that the condition imposes is not roughly proportionate to the governmental interest advanced by the condition. The retiree healthcare contributions under MCL 38.1343e, however, are voluntary and are not the product of coercion by an unconstitutional condition.

3. Const 1963, art 1, § 10 and US Const, art I, § 10, cl 1 prohibit laws that impair obligations under contracts. There can be no impairment of a contract, however, if the complaining party can freely avoid the alleged impairment altogether. Under MCL 38.1391a(5), public school employees who do not wish to participate in the retiree healthcare program can simply opt out and instead contribute money into their Tier 2 accounts. By opting out, the employees guarantee that the state will not receive their 3% contributions and that they will be paid the full amount of their bargained-for salaries. The retiree healthcare modifications therefore do not impair any employment contracts, but instead afford public school employees the option to choose between two potential retirement benefits, and the underlying employment contracts are unaffected.

4. Plaintiffs also argued that the act impairs separate contracts between the state and public school employees that guarantee the employees the opportunity to accrue pension benefits at a specific rate. A contract for employment is typically formed when the employee accepts the employer's promised terms of employment through performance. However, no contracts exist between public school employees and the state of Michigan, which has taken on the responsibility of providing pension benefits to public school employees. Public school employees were given no express promises that they would continue to accrue pension benefits at a specific rate, and even if the Office of Retirement Services had made such promises, the promises would have been ultra vires and incapable of binding the state. Accordingly, 2012 PA 300 does not impair any contractual rights possessed by public school employees to continue accruing pension benefits at any particular rate.

5. Const 1963, art 1, § 17 and US Const, Am XIV, § 1 forbid the state from depriving any person of life, liberty, or property without due process of law. The Due Process Clauses offer not only procedural protections, but also have a substantive component that protects individuals against the arbitrary exercise of governmental power. If a challenged law does not infringe any fundamental rights, the plaintiff must prove that the law is not reasonably related to a legitimate governmental interest in order to prevail on a claim of a violation of substantive due process. Plaintiffs argued that the act violates substantive due process because current employees contribute money to fund current retirees' healthcare benefits absent any guarantee that current employees themselves will ever receive retiree healthcare benefits. Plaintiffs did not argue that 2012 PA 300 infringes any fundamental rights, so the applicable test is whether the law is reasonably related to a legitimate governmental purpose, which was satisfied in this case. The state may reasonably request that public school employees assist in funding a retiree healthcare benefit system to which they belong, and the state's purpose (implementing a fiscally responsible system by which to fund public school employees' retiree healthcare) is unquestionably legitimate. It is entirely proper for the state to seek the continuation of an important retirement benefit for its public school employees while simultaneously balancing and limiting a strained public budget. The means used by the state are also reasonably related to this purpose. 2012 PA 300 therefore comports with any constitutional guarantees of substantive due process.

Affirmed.

Justice BERNSTEIN took no part in the decision of this case.

©2015 State of Michigan

# OPINION

Chief Justice:          Justices:
Robert P. Young, Jr.    Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano
                        Richard H. Bernstein

FILED April 8, 2015

S T A T E   O F   M I C H I G A N

SUPREME COURT

AFT MICHIGAN *et al*,

      Plaintiffs-Appellants,

and

MICHIGAN EDUCATION ASSOCIATION,

      Plaintiff,

v                                          No. 148748

STATE OF MICHIGAN,

      Defendant-Appellee,

and

STATE TREASURER, JOHN E. DIXON,
PUBLIC SCHOOL EMPLOYEES'
RETIREMENT SYSTEM, PUBLIC
SCHOOL EMPLOYEES' RETIREMENT
SYSTEM BOARD, PHIL STODDARD,
DEPARTMENT OF TECHNOLOGY
MANAGEMENT AND BUDGET, and
TRUST FOR PUBLIC EMPLOYEE
RETIREMENT HEALTHCARE FUND,

      Defendants.

BEFORE THE ENTIRE BENCH (except BERNSTEIN, J.)

MARKMAN, J.

We granted leave to appeal to address the constitutionality of 2012 PA 300, which modified the retirement benefits of current public school employees. Plaintiffs, which are various labor organizations representing such employees, raise three constitutional challenges: (1) whether the act violates the prohibitions of uncompensated takings in the Michigan and United States Constitutions, Const 1963, art 10, § 2 and US Const, Ams V and XIV; (2) whether the act impairs the obligation of contracts in violation of the Michigan and United States Constitutions, Const 1963, art 1, § 10 and US Const, art I, § 10, cl 1; and (3) whether the act violates the guarantee of due process in the Michigan and United States Constitutions, Const 1963, art 1, § 17 and US Const, Am XIV, § 1. After considering each of these challenges, we hold that the act does not violate any provision of either the Michigan or the United States Constitution. For the reasons stated in this opinion, we affirm the judgment of the Court of Appeals.

## I. FACTS AND HISTORY

### A. 2010 PA 75

Facing a budget shortfall in the state public school system in 2010, the Legislature enacted Public Act 75, which modified retirement benefits for current public school employees. The statute supplemented and altered the Public School Employees Retirement Act (Retirement Act), MCL 38.1301 *et seq.*, which governs the Michigan Public School Employees' Retirement System (MPSERS). The most controversial provision of 2010 PA 75 was MCL 38.1343e, which required all current public school employees to contribute 3% of their salaries to the MPSERS to assist in funding retiree healthcare benefits for current and future public school retirees. Before the enactment of

2

2010 PA 75, public school employees had never been required to pay for these benefits. MCL 38.1343e directed school districts to withhold and remit this 3% amount to the state for deposit into a trust account from which current retirees' healthcare benefits would be paid.

## B. *AFT MICH I*

Current public school employees, through their representative labor organizations, sued the state of Michigan and other state defendants in 2011, contending that MCL 38.1343e violated the aforementioned provisions of the Michigan and United States Constitutions. The Court of Claims held this provision unconstitutional as violative of the Takings Clauses of the Michigan and United States Constitutions, Const 1963, art 10, § 2 and US Const, Ams V and XIV, and the guarantees of due process in the Michigan and United States Constitutions, Const 1963, art 1, § 17 and US Const, Am XIV, § 1. The Court of Claims did not find any violation of the Contracts Clauses of the Michigan and United States Constitutions, Const 1963, art 1, § 10 and US Const, art I, § 10, cl 1. The state appealed the Court of Claims' ruling, and in a split decision, the Court of Appeals affirmed in part. *AFT Mich v Michigan*, 297 Mich App 597, 616, 621, 627; 825 NW2d 595 (2012) (*AFT Mich I*).

*AFT Mich I* held that MCL 38.1343e effected a taking without just compensation because the state was forcibly taking possession of a portion of the school employees' salaries without affording them just compensation in return. The Court of Appeals focused on what it viewed as the confiscatory nature of the statute-- requiring that current public school employees fund the healthcare benefits of current public school retirees

3

absent any guarantee that the former would ever be eligible to receive healthcare benefits upon their own retirement. It concluded as a result that MCL 38.1343e violated the takings clauses of the Michigan and United States Constitutions. *Id*. at 621.

The Court of Appeals also held that MCL 38.1343e unconstitutionally impaired employment contracts between public school employees and employer school districts, notwithstanding the Court of Claims' conclusion to the contrary, because MCL 38.1343e effectively required the school districts to pay the employees less than their agreed-upon salaries. Although asserting that a contractual impairment does not always rise to the level of a constitutional violation, the Court concluded nonetheless that the state here had failed to demonstrate that the impairment was necessary to further its purpose in enacting the statute, which was to ensure the fiscal stability of the MPSERS retiree healthcare program. The Court reasoned that the state could have pursued alternative means to correct the funding problem that would not have involved a diminution, or "impairment," of the salaries of current employees. Because the state had not attempted to achieve its goals through those alternatives, the Court ruled that 2010 PA 75 also violated the Contracts Clauses of the Michigan and United States Constitutions. *Id*. at 616.

Finally, the Court of Appeals held that MCL 38.1343e violated the employees' right to "substantive" due process. It concluded that the law arbitrarily forced one discrete group of individuals-- current public school employees-- to fund the retiree healthcare of a separate discrete group-- current public school retirees. The Court recognized that, although the *accrued pension* benefits of public employees are expressly protected by Const 1963, art 9, § 24 as contractual obligations that can be neither diminished nor impaired, future healthcare benefits are not. Nonetheless, because the

4

state did not prefund retiree healthcare benefits, current employees were contributing 3% of their salaries absent any guarantee that they themselves would ever receive healthcare benefits upon retirement. The Legislature could simply alter the law again and modify or even eliminate the retiree healthcare program before current employees retired. The state was thus requiring current employees to cover the state's own financial obligations, while merely undertaking an essentially empty promise that current employees would receive similar benefits when they retired. The Court believed that this scheme was unreasonable, arbitrary, and capricious, and that it violated the "substantive" due process guaranteed by the Michigan and United States Constitutions. *Id*. at 627.

Judge SAAD, who authored an opinion concurring in part and dissenting in part, would have reversed the judgment of the Court of Claims and held 2010 PA 75 constitutional. He began by noting that "legislative enactments are presumed to be constitutional absent a clear showing to the contrary," and then argued that an obligation merely to pay money cannot constitute a taking requiring just compensation, that 2010 PA 75 created an obligation between public school employees and the state that did not affect the employment contracts between the employees and their school district employers, and that the Court of Claims should not have granted relief on plaintiffs' "substantive" due process claim because it was a mislabeled claim essentially alleging an uncompensated taking, an argument that plaintiffs had separately raised. *AFT Mich I*, 297 Mich App at 630-640 (SAAD , J., concurring in part and dissenting in part).

The state sought leave to appeal the Court of Appeals' ruling in *AFT Mich I*. That application is currently pending before this Court and has been held in abeyance for the resolution of the instant case. *AFT Mich v Michigan*, 846 NW2d 57, 58 (Mich, 2014).

## C. 2012 PA 300

The instant case arises from legislation enacted in response to the Court of Appeals' decision in *AFT Mich I*. On September 4, 2012, the Governor signed into law 2012 PA 300, which further modified the Retirement Act. Current public school employees, once again through their representative labor organizations, have challenged provisions of this statute. In doing so, they raise many of the same constitutional challenges that were asserted with regard to 2010 PA 75 in *AFT Mich I*.

The legal challenges to 2012 PA 300 focus on two principal aspects of the new law-- the changes it makes to the retiree healthcare plan and the changes it makes to the pension benefit plans provided by the MPSERS. Regarding retiree healthcare, 2012 PA 300 maintains in place MCL 38.1343e, the statute struck down by the Court of Appeals in *AFT Mich I*. However, the Legislature added two new provisions. MCL 38.1391a(5) enables current public school employees to opt out of retiree healthcare and thereby to avoid paying the 3% retiree healthcare contributions under MCL 39.1343e. And MCL 38.1391a(8) provides a separate retirement allowance for public school employees who elect to pay the 3% contributions but who then subsequently fail to qualify for retiree healthcare benefits. The allowance is equal to the amount that the employee contributed to the healthcare plan with the addition of certain interest and is payable in 60 equal monthly installments after the employee reaches the age of 60.

Concerning the pension benefits offered by the MPSERS, 2012 PA 300 alters the manner in which public school employees accrue these benefits. Before 2012 PA 300, public school employees generally fell into one of two groups. Those hired before January 1, 1990 belonged to what was commonly called the "Basic Plan." These

6

employees historically made no contributions to assist in funding their pensions. Those hired on or after January 1, 1990, automatically belonged to the "Member Investment Plan" (MIP) and contributed varying percentages of their salaries in the process of accruing pension benefits. MCL 38.1343a, as amended by 2007 PA 11. Members of both plans became fully vested in their benefits after 10 years of service, MCL 38.1381(1)(b); MCL 38.1343b, and monthly benefits were calculated using identical formulas. An employee's final average salary-- that is, the mean salary of the employee's last three years of employment-- was multiplied by the number of years served, and then further multiplied by 1.5%. MCL 38.1384.

2012 PA 300 increased the amount that all current public school employees must contribute in order to continue accruing pension benefits at the existing rate. Members of the Basic Plan, who have never before been required to contribute to their pensions, must now contribute 4% of their salaries to the MPSERS for this purpose. MCL 38.1343g(1)(a). Members of the MIP must now contribute 7% of their salaries to the MPSERS. MCL 38.1343g(1)(b). Employees who do not wish to make the additional contributions may decline to do so, but those employees will only accrue future pension benefits calculated using a 1.25% multiplier, instead of the existing 1.5% multiplier. MCL 38.1384b. Employees may also choose to discontinue accruing future pension benefits entirely and instead participate in a 401(k)-style retirement account called a "Tier 2" account. MCL 38.1384b(3) and (4). No matter which retirement plan an employee chooses, the pension benefits that the employee has already accrued are calculated using a 1.5% multiplier. MCL 38.1384b. 2012 PA 300 alters only the manner in which

7

employees accrue future pension benefits, i.e., those arising after the effective date of 2012 PA 300; it has no effect on pension benefits that have previously accrued.

## D. *AFT MICH II*

Public school employees, through their representative labor organizations, asserted numerous constitutional challenges to the validity of 2012 PA 300 in the Court of Claims. However, unlike its ruling in the challenge to 2010 PA 75, the Court of Claims ruled in favor of the state on all claims, holding that the provisions of the earlier statute deemed in *AFT Mich I* to have been unconstitutional had been sufficiently ameliorated by the enactment of the more recent statute, in particular by the choice afforded employees regarding whether to pay into the retiree healthcare plan, and that several new challenges raised for the first time against the later act were equally unavailing. Regarding the only new challenge germane to the instant case, the court found that public school employees had no vested interest in future pension benefits and, as a result, that 2012 PA 300 did not affect any contractual obligation on the part of the state to allow employees to accrue pension benefits at any particular rate.

Plaintiffs appealed, and the Court of Appeals affirmed the Court of Claims. *AFT Mich v Michigan*, 303 Mich App 651; 846 NW2d 583 (2014) (*AFT Mich II*). As did the Court of Claims, the Court of Appeals held that contributions to the retiree healthcare program would be made voluntarily and were therefore free of constitutional infirmity. The Court also assessed plaintiffs' challenges to the pension modification and, again as did the Court of Claims, concluded that 2012 PA 300 did not affect any obligation of contracts between the state and public school employees in this regard because the state is

8

not obligated to provide future pension benefits to public school employees. Plaintiffs sought leave to appeal in this Court, which we granted. *AFT Mich v Michigan*, 495 Mich 1002 (2014).

## II. STANDARD OF REVIEW

This case is an appeal from summary disposition in favor of defendants involving issues of constitutional, statutory, and contractual interpretation. This Court reviews de novo all such issues. *Nat'l Pride At Work, Inc v Governor*, 481 Mich 56, 63; 748 NW2d 524 (2008); *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002); *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

## III. PLAINTIFFS' ARGUMENTS

Plaintiffs raise three clearly articulated arguments before this Court against 2012 PA 300. First, they argue that the statute violates the Takings Clauses of the Michigan and United States Constitutions, Const 1963, art 10, § 2 and US Const, Ams V and XIV, by allowing the state to retain a significant amount of the interest that will accrue on public school employees' retiree healthcare contributions. Second, plaintiffs argue that 2012 PA 300 violates the Takings Clauses for the additional reason that it unconstitutionally coerces public school employees into waiving their rights under those constitutional provisions. Third, they argue that 2012 PA 300 "breaches" contracts between the state and public school employees guaranteeing employees that they will continue accruing pension benefits at a specific rate.

9

Although plaintiffs frame their third argument as a "breach of contract" claim, we understand them essentially to be raising a constitutional challenge to the pension modifications under Const 1963, art 1, § 10 and US Const, art I, § 10, cl 1, which prohibit laws impairing the obligation of contracts. An action for breach of a contract and an action alleging that a law impairs the obligation of a contract are distinct claims. *Thompson v Auditor General*, 261 Mich 624, 634; 247 NW 360 (1933). A refusal to perform in compliance with a valid contract amounts to a breach of a contract and may entitle the other party to damages or other forms of relief; however, a breach does not affect the contract's fundamental validity. *Id*. In contrast, a contract is "impaired" when a law undermines a party's ability to legally enforce that contract; a contractual impairment is typically remedied through invalidation of the impairing law. *Id*. at 634-635. Plaintiffs here are not, in fact, seeking remedies for *breach* of contract, but rather are seeking the invalidation of 2012 PA 300 because, they allege, it impairs an asserted contract between public school employees and the state.[1] Consequently, we analyze plaintiffs' objection to the pension modifications instituted by 2012 PA 300 as a claim of unconstitutional impairment of contractual obligations under the Contract Clauses of the Michigan and United States Constitutions.[2]

---

[1] Plaintiffs' reply brief requests only that "[t]his Court should declare the contested provisions [of 2012 PA 300] to be unenforceable."

[2] If we are mistaken, and plaintiffs do indeed seek relief for a claim of breach of contract, our ruling is unaffected. As discussed in Part IV(B)(2) of this opinion, plaintiffs have failed to demonstrate that public school employees have a contractual right to continue accruing pension benefits at any specific rate. By the same analysis, the state could not

10

Plaintiffs also make a broad and unsupported argument that "2012 PA 300 does not repair the defect found in 2010 PA 75. [The act] is still unconstitutional because it permits an extraction with no guarantee of benefit and provides for a refund of contributions which itself is unconstitutional." Plaintiffs elaborate that "[the retiree healthcare contributions] now made still lack any certainty that the individual paying in MPSERS will actually receive post employment retiree health care. Further, the provision for a refund of payments is so unreasonable as to be itself a violation of the individual's right to substantive due process."

By arguing that 2012 PA 300 is "still" unconstitutional, plaintiffs appear to be reasserting the arguments that prevailed with respect to 2010 PA 75 in *AFT Mich I*. But to the extent that plaintiffs expressly raise these same arguments, they do so in an inconsistent and ambiguous manner. Plaintiffs' brief on appeal, for example, states: "[MCL 38.1343e] is a deprivation of the right of substantive due process for the same reasons expressed to this Court, and the Court of Appeals, in [*AFT Mich I*]." Contradictorily, however, plaintiffs' reply brief states: "Defendant incorrectly asserts that Plaintiffs have somehow argued that 2012 PA 300 deprives members of their right to substantive due process." We are therefore left somewhat confused about the appropriate manner by which to evaluate these arguments.

In the interest of a thorough and complete adjudication for the numerous persons whom plaintiffs represent, we believe that the most appropriate solution is to conclude

have breached a contract by enacting 2012 PA 300 if the alleged contract did not exist in the first place.

11

that by arguing that "2012 PA 300 does not repair the defect found in 2010 PA 75," plaintiffs are essentially arguing that 2012 PA 300 is unconstitutional for the same reasons that the Court of Appeals deemed 2010 PA 75 to be unconstitutional. In other words, we believe plaintiffs continue to argue that 2012 PA 300 violates the Contract Clauses and any "substantive" due process guarantees of the Michigan and United States Constitutions for the same reasons that the Court of Appeals deemed these provisions to have been violated by 2010 PA 75.[3]

Defendants, not entirely without basis, contend that plaintiffs have abandoned these arguments by failing to properly rearticulate them; nonetheless, we believe it appropriate to address them. Although we are troubled that plaintiffs have not clearly reasserted their original arguments (or clearly articulated new arguments, if it was their intention to do so), we choose to address these arguments for several reasons. First, plaintiffs have framed their broad and unsupported arguments by at least referring to the Court of Appeals' decision in *AFT Mich I*.[4] Those references suggest, in our judgment,

---

[3] Although the Court of Appeals also held in *AFT Mich I*, 297 Mich App at 621, that 2010 PA 75 violated the Takings Clauses of the Michigan and United States Constitutions, Const 1963, art 10, § 2 and US Const, Ams V and XIV, plaintiffs have clearly raised before this Court a challenge under those constitutional provisions. Therefore, we have no need to infer from their reference to *AFT Mich I* that plaintiffs continue to make such an argument.

[4] In their reply brief, plaintiffs state:

> In *AFT Michigan* [*I*] the Court of Appeals rightly found that 2010 PA 75 deprived members of the Public School Employees Retirement System of their right to substantive due process because the statute mandated the extraction of 3% of wages without assuring that anything would be provided in return. . . .

12

that plaintiffs did not intend to abandon arguments that they asserted in that case. Second, these same arguments were all properly raised before the Court of Appeals in *AFT Mich II*, and that Court specifically addressed each of the constitutional arguments that were at the heart of the decision in *AFT Mich I*. Third, defendants themselves thoroughly addressed each of these arguments before the Court of Appeals in *AFT Mich II*, and have now thoroughly addressed the "substantive" due process argument raised before this Court. For these reasons, in evaluating the range of objections to 2012 PA 300, we have chosen to consider the arguments alleging impairment of contracts and "substantive" due process violations that prevailed in *AFT Mich I*, but have been presented to this Court in what can only be described as an indirect and obscure manner. In addition, we consider the alleged violations of the Takings Clauses that plaintiffs clearly raise before this Court, as well as the breach of contract claim that we analyze as a distinct claim of contractual impairment separate from the contractual impairment claim that prevailed in *AFT Mich I*.[5]

---

\* \* \*

> . . . 2012 PA 300 does not repair the defect found in 2010 PA 75. Section 43e, MCL 38.1343e, is still unconstitutional because it permits an extraction with no guarantee of benefit . . . .

[5] Plaintiffs' claim of contractual impairment that prevailed in *AFT Mich I* focused on the changes that 2010 PA 75 made to the retiree healthcare benefits program. *AFT Mich I*, 297 Mich App at 604, 609-610. Plaintiffs' claim of contractual impairment, newly asserted in the present case, focuses on the changes that 2012 PA 300 made to the pension benefits program.

13

Finally, we note that although plaintiffs raise challenges under both the Michigan and United States Constitutions, they have not argued with any specificity, or by reference to, the decisions of the courts of this state that a particular provision of the Michigan Constitution affords greater or distinct protections than its federal counterpart. Rather, plaintiffs have simply left it to this Court to identify such differences in meaning if and where these exist. Although this Court on numerous occasions has interpreted a Michigan constitutional provision differently than its federal counterpart,[6] "[i]t is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments . . . ." *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) (quotation marks and citation omitted). We will therefore not seek to discover whether the Michigan Constitution might afford protections greater

---

[6] Textual differences, state constitutional and common-law history, state law preexisting the constitutional provision at issue, structural differences between the Michigan and United States Constitutions, or matters of special state interest may compel us to conclude that the state Constitution offers protections distinct from those of the federal Constitution. *People v Catania*, 427 Mich 447, 466 n 12; 398 NW2d 343 (1986). We have, for example, interpreted the state Constitution more broadly on numerous occasions. Compare, e.g., *Sitz v Dep't of State Police*, 443 Mich 744; 506 NW2d 209 (1993) (holding that sobriety checkpoints are prohibited by Const 1963, art 1, § 11, which forbids "unreasonable searches and seizures"), with *Mich Dep't of State Police v Sitz*, 496 US 444; 110 S Ct 2481; 110 L Ed 2d 412 (1990) (holding such checkpoints permissible under US Const, Ams IV and XIV); and compare *People v Bullock*, 440 Mich 15, 37; 485 NW2d 866 (1992) (holding that a mandatory life sentence without the possibility of parole for possession of 650 or more grams of cocaine is so "grossly disproportionate" that it violates the prohibition of "cruel or unusual punishment" in Const 1963, art 1, § 16), with *Harmelin v Michigan*, 501 US 957; 111 S Ct 2680; 115 L Ed 2d 836 (1991) (holding that the same sentence is permissible under US Const, Ams VIII and XIV).

14

than, or distinct from, those of the United States Constitution when plaintiffs have not supplied us with arguments or guidance in support of this proposition. Rather, we will assume for the purposes of this case that similarly worded provisions of the Michigan and United States Constitutions are intended to be coextensive in their meaning, although we emphasize strongly that we are never bound to such an interpretation of the former. *Harvey v Michigan*, 469 Mich 1, 6 n 3; 664 NW2d 767 (2003).

## IV. ANALYSIS

We have sought to examine closely plaintiffs' constitutional arguments, and for the reasons set forth we conclude that they do not warrant the invalidation of 2012 PA 300. We preface our analysis leading to this conclusion, however, by noting that this Court is obligated to uphold all laws that do not infringe the state or federal Constitutions and invalidate only those laws that do so infringe. We do not render judgments on the wisdom, fairness, or prudence of legislative enactments. See *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 161; 680 NW2d 840 (2004). Legislation is presumed to be constitutional absent a clear showing to the contrary. *Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 413; 488 NW2d 182 (1992). In the present case, this Court is not oblivious to the fact, as reflected by the sheer breadth of the class of plaintiffs, that many public school employees intensely dislike the policies instituted by 2012 PA 300 and believe that the healthcare and pension choices imposed on them are unfair and unsatisfactory. However, decisions concerning the allocation of public resources will often leave some parties disappointed. Recourse and correction must be pursued through those bodies authorized by our Constitution to undertake such decisions-- typically the

15

legislative branch-- and not through bodies, such as this Court, that are charged only with comparing the provisions of the law with the prohibitions of our Constitution and deciding whether they are compatible. Const 1963, art 3, § 2.

We also note at the outset that all public employees must contend with a variety of future uncertainties, of which they are, or should be, aware at the time that they pursue and accept public employment. The terms, conditions, and even continued existence of public employment positions may be influenced by the changing fiscal conditions of the state, the evolving policy priorities of governmental bodies, constitutional modifications and other initiatives of the people, and the ebb and flow of state, national, and global economies. The future is not easily predictable, and public employees, along with individuals working in the private sector, must contend with these realities.[7] When changing circumstances require that the state undertake what may be difficult or unpopular decisions regarding its own work force, it will often be unavailing for dissatisfied public employees to file constitutional lawsuits insisting on an unreasonable level of fixedness or immutability. See *LeRoux v Secretary of State*, 465 Mich 594, 616; 640 NW2d 849 (2002) (" '[T]he Legislature, in enacting a law, cannot bind future Legislatures.' "), quoting *Ballard v Ypsilanti Twp*, 457 Mich 564, 569; 577 NW2d 890 (1998) (alteration in original).

---

[7] This opinion considers only the *constitutionality* of legislative changes to the public school employees' retirement plan and not "whether the plan is ideal . . . ." *AFT Mich II*, 303 Mich App at 677. Although we do not agree with plaintiffs' constitutional arguments, the social *value* and *importance* of public school employees and their work is in no way intended to be derogated or diminished by this opinion.

16

## A. TAKINGS

Plaintiffs argue that 2012 PA 300 causes the state to take private property without providing just compensation, in violation of the Michigan and United States Constitutions. *AFT Mich I* held that 2010 PA 75 violated both Const 1963, art 10, § 2 and US Const, Ams V and XIV because its provision for mandatory retiree healthcare contributions caused the state to take portions (3%) of public school employees' salaries without providing just compensation. *AFT Mich I*, 297 Mich App at 621. According to plaintiffs, 2012 PA 300 suffers from the same constitutional defect. We respectfully disagree and hold that 2012 PA 300 does not violate the uncompensated taking prohibitions contained in those provisions. However, we emphasize that we address in this case only 2012 PA 300 and do not decide whether the Court of Appeals correctly held that 2010 PA 75 violated those same provisions.

The government may not take private property for public use without providing just compensation to the owner. The power to take property, commonly referred to as "eminent domain" or "condemnation," arises from the state's power as a sovereign. *Silver Creek Drain Dist v Extrusions Div, Inc*, 468 Mich 367, 373; 663 NW2d 436 (2003). The term "property" encompasses everything over which a person "may have exclusive control or dominion." *Rassner v Federal Collateral Society, Inc*, 299 Mich 206, 213-214; 300 NW 45 (1941) (quotation marks and citation omitted). The power of eminent domain is enshrined and limited in the Takings Clauses of the Michigan and United States Constitutions. Const 1963, art 10, § 2 provides:

> Private property shall not be taken for public use without just compensation therefore [sic] being first made or secured in a manner prescribed by law.

17

The Fifth Amendment, US Const, Am V, provides:

> No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

The Fifth Amendment is applied to the states through the Fourteenth Amendment, US Const, Am XIV. *Chicago, B & Q R Co v Chicago*, 166 US 226, 241; 17 S Ct 581; 41 L Ed 979 (1897) (declaring that the Fourteenth Amendment forbids the states from taking private property without providing just compensation). Although the courts of this state have applied the state and federal Takings Clauses coextensively in many situations,[8] this Court has found that Const 1963, art 10, § 2 offers broader protection than do US Const, Ams V and XIV.[9] However, because plaintiffs have not argued that Const 1963, art 10, § 2 should be applied any differently than the federal Takings Clause in this case, we shall not inquire further whether it would be proper to do so.

---

[8] *Peterman v Dep't of Natural Resources*, 446 Mich 177, 184 n 10; 521 NW2d 499 (1994).

[9] Compare, for example, *Kelo v New London*, 545 US 469; 125 S Ct 2655; 162 L Ed 2d 439 (2005), with *Wayne Co v Hathcock*, 471 Mich 445; 684 NW2d 765 (2004). *Kelo* held that the requirement of US Const, Ams V and IX that eminent domain be exercised for a "public *use*" was satisfied when the city sought to condemn property and transfer it to private entities upon a showing that the transfer would create an economic benefit to the community; essentially, the government can "take" private property when the taking advanced a "public *purpose*." In contrast, *Hathcock* held that the requirement of Const 1963, art 10, § 2 that eminent domain be exercised for "public use" was violated when the county sought to condemn property and transfer it to private entities in order to facilitate economic development. We explained that the public-use requirement forbids the forced transfer of private property to a private entity for a private use and held that economic benefit to a community, without more, did not constitute a "public use," even though it could be construed as a "public purpose." *Hathcock*, 471 Mich at 462, 482-483.

The term "taking" can encompass governmental interference with rights to both tangible and intangible property. *Ruckelshaus v Monsanto Co*, 467 US 986, 1003-1004; 104 S Ct 2862; 81 L Ed 2d 815 (1984). However, governmental action creating general burdens or liabilities, i.e., merely requiring citizens to expend monies for valid public purposes and expenditures, typically will not form the basis for a cognizable taking claim. See *Eastern Enterprises v Apfel*, 524 US 498, 540-542; 118 S Ct 2131; 141 L Ed 2d 451 (1998) (Kennedy, J., concurring in part and dissenting in part); *id*. at 554-555 (Breyer, J., dissenting). Adopting a rule to the contrary would include taxes and user fees within the realm of compensable takings, and the courts of this country have long held these kinds of governmental actions distinct from and outside the scope of takings analysis. *Koontz v St Johns River Water Mgt Dist*, 570 US ___, ___; 133 S Ct 2586, 2600-2601; 186 L Ed 2d 697 (2013); *Mobile Co v Kimball*, 102 US 691, 703; 26 L Ed 238 (1880). It is possible, nonetheless, for the government to undertake a constitutional taking that requires compensation when it asserts control over a discrete and identifiable fund of money, such as a deposit account. *Webb's Fabulous Pharmacies, Inc v Beckwith*, 449 US 155, 164-165; 101 S Ct 446; 66 L Ed 2d 358 (1980).

To generate a compensable taking, the government must assert its authority to seize title or impair the value of property. This does not occur if the property in question is voluntarily relinquished to the government.[10] As the United States Supreme Court has explained:

---

[10] See *Franklin Mem Hosp v Harvey*, 575 F3d 121, 129 (CA 1, 2009) ("[W]here a property owner voluntarily participates in a regulated program, there can be no

19

> [A]s long as [the property owner] is aware of the conditions under which the [property is given to the government], and the conditions [governing the transfer of property] are rationally related to a legitimate Government interest, a voluntary submission of [property] by an [owner] in exchange for . . . economic advantages . . . can hardly be called a taking. [*Ruckelshaus*, 467 US at 1007.]

Put simply, a property owner cannot give property to the government of his or her own volition, and then proceed to argue that the government must compensate the owner for that contribution.

MCL 38.1343e institutes a 3% retiree healthcare contribution that, according to plaintiffs, generates an unconstitutional taking. The statute provides:

> Except as otherwise provided in this section or [MCL 38.1391a], each member who first became a member before September 4, 2012 shall contribute 3% of the member's compensation to the appropriate funding account established under the public employee retirement health care funding act, 2010 PA 77, MCL 38.2731 to 38.2747. The member contributions under this section shall be deducted by the employer and remitted as employer contributions in a manner that the retirement system shall determine. As used in this section, "funding account" means the appropriate irrevocable trust created in the public employee retirement health care funding act, 2010 PA 77, MCL 38.2731 to 38.2747, for the deposit of funds and the payment of retirement health care benefits.

Unlike the 3% retiree healthcare contribution in 2010 PA 75, which the Court of Appeals held to be a taking in *AFT Mich I*, the same contribution arising from 2012 PA 300 is not mandatory. Instead, public school employees may entirely opt out of the retiree healthcare program and thereby avoid making the 3% salary contributions:

---

unconstitutional taking."), citing *Yee v City of Escondito*, 503 US 519, 527-528; 112 S Ct 1522; 118 L Ed 2d 153 (1992).

20

Except as otherwise provided in this section, beginning September 4, 2012 and ending at 5 p.m. eastern standard time on January 9, 2013, the retirement system shall permit each qualified member to make an election to opt out of health insurance coverage premiums that would have been paid by the retirement system under [MCL 38.1391] and opt into the Tier 2 account provisions of this section effective on the transition date. [MCL 38.1391a(5), as amended by 2012 PA 359.]

Any public school employee who does not want to participate in the retirement healthcare plan can elect instead to contribute to a Tier 2 retirement account, and the school district employer will match this contribution up to 2% of the contributing employee's salary. MCL 38.1391a(1). An employee need not contribute anything to his or her Tier 2 retirement account. See MCL 38.1391a(2).

In *AFT Mich II*, the Court of Appeals held that 2012 PA 300 did not give rise to an uncompensated taking because the retiree healthcare contributions are now completely voluntary:

[T]here is no "taking" under 2012 PA 300 because participation in the retiree healthcare system is now voluntary. Unlike in [*AFT Mich I*], in which the retiree healthcare contributions were mandatory and involuntary, members under the new legislation now have a choice. Thus, it cannot be argued that members' wages have been seized or confiscated . . . . [*AFT Mich II*, 303 Mich App at 678.]

We agree with this analysis. Voluntary healthcare contributions do not violate Const 1963, art 10, § 2 and US Const, Ams V and XIV because, as a general proposition, the government does not, for constitutional purposes, "take" property that has been voluntary given. Here, the state is offering a retirement benefit-- publicly subsidized healthcare-- to public school employees who serve for the requisite period of time. The state is not

21

obligated to provide such a benefit to any of its public school employees, but rather has made an affirmative decision to do so.[11] It is therefore entirely reasonable for the state to request in turn that any eligible employee who desires access to this benefit should help to pay for it.

Plaintiffs observe that not all public school employees who opt into the retiree healthcare program will eventually receive any actual healthcare benefits. Some number of employees will inevitably leave public school employment before they acquire sufficient years of service to qualify for these benefits.[12] Under 2012 PA 300, these employees do not forfeit the contributions that they made toward the retiree healthcare program. Rather, MCL 38.1391a(8) provides a separate retirement allowance for these employees, stating:

---

[11] Const 1963, art 9, § 24 protects "accrued financial benefits of each pension plan and retirement system of the state" by making them contractual obligations of the state. However, this Court has determined that healthcare benefits are not protected by article 9, § 24 because healthcare benefits are not "financial" and cannot be "accrued." *Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 653-655; 698 NW2d 350 (2005). Therefore, the state is under no obligation to provide retiree healthcare benefits to any current public school employee, and instead of asking current employees to contribute 3% of their wages to help fund the program, the state could have instead chosen to end the retiree healthcare program entirely.

[12] Plaintiffs also opine that the Legislature may at some future time disadvantageously alter the law governing the eligibility for this benefit and that, as a result, the terms of the MCL 38.1343e contributions are "so unreasonable as to be a Taking without just compensation." However, these concerns are simply too speculative to address at this time. We have no idea if, or in what manner, the Legislature will ever choose to modify the MPSERS retiree healthcare system. If modifications do, in fact, occur, plaintiffs could choose to institute a constitutional challenge at that time, the success of which would depend on the specific character of future changes. As we state in Part IV(C) of this opinion, no court can evaluate a law that does not yet, and may never, exist.

A member or former member who does not make the election under subsection (5), who is 60 years of age or older, who does not qualify for the payment of health insurance coverage premiums by the retirement system under [MCL 38.1391], and who files an application with the retirement system on or after termination of employment shall receive a separate retirement allowance as calculated under this subsection. Except as otherwise provided under this subsection, the separate retirement allowance under this subsection shall be paid for 60 months and shall be equal to 1/60 of the amount equal to the contributions made by the member under [MCL 38.1343e]. . . . The amount of the separate retirement allowance as determined under this subsection shall be increased in a manner as determined by the retirement system by a percentage equal to 1.5% multiplied by the total number of years that member made contributions under [MCL 38.1343e].

To briefly paraphrase, an employee qualifying for this allowance will receive it over the course of 60 equal monthly installments beginning when the employee reaches the age of 60, and the allowance will equal the total amount that the employee contributed under MCL 38.1343e with the addition of interest. The interest amount is calculated by multiplying 1.5% of the total value of the contributions by the number of years that the employee contributed to the healthcare program.

Plaintiffs have argued before this Court that even if MCL 38.1343e does not "take" portions of *all* public school employees' salaries, it does generate a compensable taking from employees who opt into the retiree healthcare program but, for whatever reason, do not eventually qualify for retiree healthcare benefits. Plaintiffs argue that the retiree healthcare contributions, and any interest generated by those contributions while in the state's possession, remain the private property, or the separate fund, of the contributing employee. Thus, following plaintiffs' reasoning, if an employee fails to qualify for retiree healthcare benefits, the state has committed an uncompensated taking when it retains those contributions until the employee turns 60 and then does not pay to

23

the employee the entirety of the interest that those contributions have generated while in the state's possession. Plaintiffs broadly conclude that the terms of the separate retirement allowance constitute a taking for which just compensation must be paid:

> [MCL 38.1391a(8)] allows the State of Michigan to keep monies deposited with MPSERS by public school employees who choose to opt in to MPSERS post employment retiree health care but, for myriad reasons, are never eligible to receive that benefit. However, the statute does not require prompt refund of contributions made by these public school employees . . . . Although the deposits are eventually refunded, the State of Michigan is permitted to keep these deposits for decades, invest the deposits and retain the increase in value of the deposits. . . . This is a *per se* Taking . . . .

Plaintiffs here are attempting to create a distinction where none exists. The terms of the separate retirement allowance under MCL 38.1391a(8) are part and parcel of the choice offered to the public school employees under MCL 38.1391a(5). Any employee who chooses to participate in the retiree healthcare program does so with full notice that if he or she fails to qualify for retiree healthcare, he or she will receive the separate retirement allowance as described in MCL 38.1391a(8). It is unreasonable to suggest that the employees who opt into the retiree healthcare program consent to the state's receiving 3% of their salaries, but do not consent to the subsequent terms of MCL 38.1391a(8) if they fail eventually to qualify for retiree healthcare benefits. The 3% contributions and the separate retirement allowance are two sides of the same coin, and if public school employees voluntarily consent to one, they necessarily consent to the other.

In the wake of the Court of Appeals' holding in *AFT Mich II* that the retiree healthcare contributions do not constitute takings because they are voluntary transactions, plaintiffs continue to argue that the employees' right to be free of an uncompensated

24

taking has nonetheless been violated by 2012 PA 300. Specifically, plaintiffs allege that 2012 PA 300 is invalid because by requiring public school employees to make contributions in order to qualify for retiree healthcare, the state has attached an unconstitutional condition to the receipt of a government benefit:

> [A]s a condition of the receipt of post employment retiree health care (for which the [public school employee] pays), he or she must agree to surrender rights guaranteed to them by both the Constitution of the United States and that of the State of Michigan. The person must consent to having the State of Michigan take the value of their invested contributions. That is a patently unconstitutional requirement. . . . [2012] PA 300 may not require a surrender of the right to be protected from a Taking without just compensation.

This argument essentially disputes the Court of Appeals' conclusion that retiree healthcare contributions are made voluntarily. 2012 PA 300, in plaintiffs' view, requires public school employees seeking access to retiree healthcare to relinquish in exchange their right to demand just compensation if they eventually fail to qualify for retiree healthcare and the state retains possession of their contributions until they reach the age of 60. Plaintiffs argue that, by assuming that the contributions are made voluntarily, the Court of Appeals failed to recognize the unconstitutional condition imposed by 2012 PA 300. According to plaintiffs, the enticement of a governmental benefit-- access to the retiree healthcare program-- has in this case effectively, or practically, "coerc[ed]"[13] public school employees into relinquishing their constitutional rights-- specifically, the right to be free of an uncompensated governmental taking:

---

[13] Quoting *Koontz*, 570 US at ___; 133 S Ct at 2594.

25

The Court of Appeals rejected the contention that retention of interest was a Taking because "participation in the retiree healthcare system is now voluntary." [*AFT Mich II*, 303 Mich App at 678.] However, with respect, this conclusion misses the point entirely. The State of Michigan cannot require an individual to waive rights available under the Constitution as a condition of receipt of a state provided benefit.

We disagree and conclude that the state has not attached an unconstitutional condition to the receipt of a governmental benefit.

Individuals may under most circumstances voluntarily waive their constitutional rights.[14] Individuals also have no constitutional right to receive any particular governmental benefits. *Falk v State Bar of Mich*, 411 Mich 63, 107; 305 NW2d 201 (1981) (opinion by RYAN, J.), quoting *Elrod v Burns*, 427 US 347, 361; 96 S Ct 2673; 49 L Ed 2d 547 (1976). However, under limited circumstances, the government may be prevented from *denying* a benefit to an individual because that person has exercised a constitutional right; this is known as the "doctrine of unconstitutional conditions." *Dolan v City of Tigard*, 512 US 374, 385; 114 S Ct 2309; 129 L Ed 2d 304 (1994). Not every condition attached to a governmental benefit is an unconstitutional one, and although the exact boundaries of the doctrine are difficult to define,[15] the fundamental principle

---

[14] See, e.g., *People v Buie*, 491 Mich 294, 313-314; 817 NW2d 33 (2012) (criminal defendant may voluntarily waive the right to confront witnesses); *People v Russell*, 471 Mich 182, 188-190; 684 NW2d 745 (2004) (party may voluntarily waive the right to counsel); *McKinstry v Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167, 184; 405 NW2d 88 (1987) (party may voluntarily waive the right to court access and a jury trial). See also *Woodman v Kera LLC*, 486 Mich 228, 284; 785 NW2d 1 (2010) (opinion by MARKMAN, J.) (stating that even minors may voluntarily waive their constitutional rights when charged with a crime).

[15] For one helpful discussion of the doctrine's development, see generally Sullivan, *Unconstitutional Conditions*, 102 Harv L Rev 1413 (1989).

underlying the doctrine is clear: the governmental cannot attach conditions to government benefits that effectively *coerce* individuals into relinquishing their constitutional rights.[16]

The United States Supreme Court has applied the doctrine of unconstitutional conditions to claims arising under the Takings Clause of US Const, Ams V and XIV and has created a specific test of sorts: a governmental benefit given in exchange for a seemingly voluntary transfer of private property interests to the government may violate the doctrine of unconstitutional conditions if the condition lacks a nexus between the burden that the condition imposes on the property owner and the government's interest advanced by the condition, or if the burden that the condition imposes is not roughly proportionate to the governmental interest advanced by the condition.[17]  Thus far, the

---

[16] See *Koontz*, 570 US at ___; 133 S Ct at 2595 ("[T]he unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them.").  See also *id*. at ___; 133 S Ct at 2610 ("[T]he entire unconstitutional conditions doctrine, as the majority notes, rests on the fear that the government may use its control over benefits (like permits) to 'coerc[e]' a person into giving up a constitutional right.") (Kagan, J., dissenting) (citation omitted) (alteration in original).

[17] See *id*. at ___; 133 S Ct at 2595 (opinion of the Court) ("[T]he government [may] condition approval of a permit on the dedication of property to the public so long as there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal.").  See also *Dolan*, 512 US at 385 ("Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government *where the benefit sought has little or no relationship* to the [relinquished right].") (emphasis added).  The nexus/proportionality standard has been derived from the United States Supreme Court's holdings in *Dolan* and *Nollan v California Coastal Comm*, 483 US 825; 107 S Ct 3141; 97 L Ed 2d 677 (1987).  These cases apply the unconstitutional conditions doctrine to "takings" under US Const, Ams V and XIV and conclude that in order for the government to constitutionally condition receipt of a governmental benefit on the

27

Court has only applied this test in the context of "land-use decisions conditioning approval of development on the dedication of property to public use." *City of Monterey v Del Monte Dunes at Monterey, Ltd*, 526 US 687, 702-703; 119 S Ct 1624; 143 L Ed 2d 882 (1999).

This Court has never applied the doctrine of unconstitutional conditions to Const 1963, art 10, § 2. Because plaintiffs have not argued that we should analyze their unconstitutional conditions argument in a manner in any way distinct from the United

uncompensated relinquishment of property rights, the government's condition must have an "essential nexus" to the government's interest advanced by the condition and the burden imposed on the property owner by the condition must have "rough proportionality" to the government interest advanced by the condition. *Dolan*, 512 US at 386, 391.

The 'nexus/proportionality' analysis is unique to unconstitutional conditions claims arising under US Const, Ams V and XIV and, as of yet, has only been applied in the context of land-use permits. "*Nollan* and *Dolan* 'involve a special application' of [the doctrine of unconstitutional conditions] that protects the Fifth Amendment right to just compensation for property the government takes when owners apply for land-use permits." *Koontz*, 570 US at ___; 133 S Ct at 2594. Therefore, although plaintiffs rely on *Koontz*, *Dolan*, and *Nollan*, it is not entirely clear that the analyses set forth in those opinions are applicable to the present case. However, because neither party addressed these opinions' applicability, we assume without deciding that their reasoning could be extended to the present context.

We note that in most applications of the doctrine of unconstitutional conditions concerning constitutional rights other than the Fifth Amendment right to be free of an uncompensated taking, the Supreme Court has focused mainly on whether the condition coerces individuals into relinquishing constitutional rights. See, e.g., *O'Hare Truck Serv, Inc v City of Northlake*, 518 US 712, 721; 116 S Ct 2353; 135 L Ed 2d 874 (1996) ("Our cases make clear that the government may not coerce support [by punishing a person for political views], unless it has some justification beyond dislike of the individual's political association."). Under either the nexus/proportionality or the coercion standard, however, plaintiffs' unconstitutional conditions argument fails.

28

States Supreme Court's application of the doctrine to claims arising under US Const, Ams V and XIV, we decline to do so here. For the immediate purposes of plaintiff's unconstitutional conditions argument, we analyze Const 1963, art 10, § 2 and US Const, Ams V and XIV coextensively, although we are not bound to do so.

Accordingly, in order to address plaintiffs' arguments, we will inquire whether 2012 PA 300 "coerces" public school employees into relinquishing their constitutional rights. We will also evaluate 2012 PA 300 under the United States Supreme Court's "rough proportionality" standard, even though the Court has yet to extend this analysis to situations akin to that in the present case. Applying the analytical framework set forth by the United States Supreme Court, we find plaintiffs' unconstitutional conditions argument unavailing. The retiree healthcare contributions made pursuant to MCL 38.1343e are indeed, as the Court of Appeals determined in *AFT Mich II*, voluntary. They are not the product of "coercion" by an unconstitutional condition.

As an initial matter, we note that a necessary premise of plaintiffs' unconstitutional conditions argument is the existence of a situation in which there would have been a compensable taking but for the property owner's *choice* to give property rights to the government. Only in such a situation could a property owner properly argue that he or she had a constitutional right to be free of an uncompensated taking that an unconstitutional condition allegedly coerced the owner to waive. In the present case, this would require an affirmation of the Court of Appeals' holding in *AFT Mich I* that a *compelled* healthcare contribution under MCL 38.1343e constitutes a taking. *AFT Mich I*, 297 Mich App at 617-621. However, we need not reach the merits of *AFT Mich I* because, even assuming that a compelled healthcare contribution would constitute a

29

taking, plaintiffs have nonetheless failed to demonstrate that 2012 PA 300 would violate the doctrine of unconstitutional conditions if that were the case.

The state here is not coercing public school employees into giving up their rights under Const 1963, art 10, § 2 and US Const, Ams V and XIV, but is merely seeking, as a condition for receiving access to retiree healthcare benefits, the assistance of public school employees in paying for these benefits. Plaintiffs have not demonstrated that the terms controlling MCL 38.1343e contributions (the allegedly unconstitutional condition) are unrelated to the state's purpose furthered by the contributions or that the relationship between the condition and the benefit is so compelling or disproportionate that public school employees are effectively coerced into relinquishing their constitutional rights.

Suggesting that the state's condition here bears no nexus or roughly proportionate relationship to the state's interest advanced by the contributions would strain credulity. The MCL 38.1343e contributions directly fund the MPSERS's retiree healthcare program, advancing the state's strong interest in providing retiree healthcare for its public school employees. If, for example, 2012 PA 300 had required that public school employees grant the state easements on their real property in order to qualify for retiree healthcare benefits, that condition could not similarly be said to advance the same state interest because the condition would be entirely unrelated to the state's interest in providing for retiree healthcare benefits. The present situation clearly implicates a strong and direct connection, or nexus, between the conditional burden placed on public employees and the state's interest.

Furthermore, the willingness of public school employees to participate in the retiree healthcare program compellingly suggests that any burden imposed on employees

30

by the state's condition is also proportionate to its goal. This is because, in this situation, the interests of the state and public school employees participating in the MPSERS retiree healthcare program are aligned. That is, the state seeks to provide retiree healthcare to its public school employees, and these self-same employees seek to receive retiree healthcare benefits. If the burden imposed by the MCL 38.1343e contributions were disproportionate to the state's interest in requiring these contributions, it would mean that public school employees were contributing more value than they expected to receive from the retiree healthcare program.[18] If that were the case, few employees would presumably participate.

---

[18] To understand why this is so, consider the situation in *Dolan*. In that case, the plaintiff landowner sought a permit to expand her store and pave a new parking lot. As a condition of granting the permit, the defendant city required her to allocate a portion of her land as public green space, which could not be developed in the future, in order to mitigate the flooding hazard that the new store and parking lot would pose. The city also demanded that she provide a public pathway on her property to accommodate increased bicycle and pedestrian traffic that her addition was expected to generate. *Dolan*, 512 US at 379-380. The Court in *Dolan* ruled the city's conditions to be unconstitutional because the burden that the conditions would impose on the plaintiff was disproportionate to the anticipated problems regarding drainage and increased pedestrian and bicycle traffic that the city would face if the plaintiff completed her construction project. *Id*. at 393-396. The city had not explained why the green space dedicated to flood control had to be public, as opposed to private, in order to mitigate the flood risk. Furthermore, it had not demonstrated that the increased foot and bicycle traffic warranted an additional pathway through the plaintiff's property. It appeared that the city was trying to improve *its* public space and thoroughfares at *the plaintiff's sole expense*, instead of proportionally offsetting the problems that the plaintiff's particular development project would create for the community.

In the present case, the condition attached to the governmental benefit is the payment of the MCL 38.1343e contributions under the terms provided in 2012 PA 300, which condition directly advances the state's interest in providing healthcare benefits to public school retirees. In order for the condition to be deemed disproportionate to the

31

We also do not believe that the state has created a coercive situation in which public school employees are compelled to participate in the retiree healthcare system. Unlike the situations in the cases cited by plaintiffs involving land use permits-- a benefit within the government's exclusive power to convey-- there are multiple sources of healthcare coverage available to public school employees. Public school employees who dislike the terms of the program can explore health insurance options in the open market. If the MPSERS retiree healthcare program achieves a high participation rate, this seems more likely to be attributable to the fact that the program constitutes an attractive retirement benefit, rather than because there is some ongoing coercion in inducing employee participation.[19]

---

state's interest, the burden imposed on public school employees by the terms governing MCL 38.1343e contributions would need to exceed the burden incurred by the state in providing the retiree healthcare benefits. Plaintiffs have not alleged this to be the case, and because the state exclusively bore these costs until 2010 PA 75 was passed, we presume that employee contributions only cover a portion of this program's full costs. If anything, it would appear that the present retiree healthcare system still benefits, disproportionately as a class, public school employees who participate and not the state.

[19] See *South Dakota v Dole*, 483 US 203, 211; 107 S Ct 2793; 97 L Ed 2d 171 (1987):

> [South Dakota] contends that the coercive nature of this program is evident from the degree of success it has achieved. We cannot conclude, however, that a conditional grant of federal money of this sort is unconstitutional simply by reason of its success in achieving the congressional objective.

Although the Court did not specifically address the doctrine of unconstitutional conditions in *Dole*, we find its analysis of coerciveness instructive. *Dole* articulated a limitation on the constitutional spending power of the Congress-- federal spending must be related to the federal interest advanced by the spending project, and the spending must not be so great that it coerces states into acquiescing to conditions placed on that funding. This limitation is in many ways analogous to the doctrine of unconstitutional conditions--

In sum, we find unavailing plaintiffs' argument that 2012 PA 300 violates the constitutional prohibitions against an uncompensated taking contained in Const 1963, art 10, § 2 and US Const, Ams V and XIV. Public school employees who have chosen to participate in the retiree healthcare program have voluntarily undertaken to contribute to the program, and the state does not "take" property that is voluntarily given. Furthermore, these contributions are genuinely voluntary because plaintiffs have failed to show that 2012 PA 300 violates the doctrine of unconstitutional conditions. The retiree healthcare contribution is inextricably and directly linked to the governmental benefit being offered, and no public school employee is coerced into participating in the retiree healthcare system. 2012 PA 300 has not infringed public school employees' rights under Const 1963, art 10, § 2 and US Const, Ams V and XIV to be free of uncompensated takings.

## B. CONTRACTS

Plaintiffs next argue that 2012 PA 300 impairs the "obligation of contracts" in violation of Const 1963, art 1, § 10 and US Const art I, § 10, cl 1. We again disagree. Both the Michigan and United States Constitutions prohibit laws that impair obligations under contracts. Const 1963, art 1, 10 provides:

> No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted.

US Const, art I, § 10, cl 1 provides:

---

while the doctrine of unconstitutional conditions protects individual constitutional rights from *governmental* incursion, the doctrine set forth in *Dole* and related cases protects the states' right to sovereignty and self-governance from *federal* incursion.

No State shall . . . pass any Bill of Attainder, ex post facto Law or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

This Court has often interpreted these provisions coextensively,[20] and because plaintiffs have not argued that the Michigan Constitution affords additional protection, we will not seek to ascertain otherwise.

## 1. RETIREE HEALTHCARE BENEFITS

*AFT Mich I*, 297 Mich App at 610-616, held that 2010 PA 75 violated Const 1963, art 1, § 10 and US Const, art I, § 10, cl 1 because it significantly impaired employment contracts and the state had not demonstrated that the impairment was necessary to serve the public good. Plaintiffs continue to argue that the modifications made to the retiree healthcare plan unconstitutionally impair the employment contracts between public school employees and employer school districts. Specifically, plaintiffs allege that 2012 PA 300 impairs employees' contracted-for right to a particular salary. We reject this argument as asserted against 2012 PA 300, but we do not decide whether the Court of Appeals correctly found 2010 PA 75 to be violative of the aforementioned constitutional provisions.

In *AFT Mich II*, the Court of Appeals analyzed and subsequently rejected plaintiffs' claim that the retiree healthcare modifications enacted by 2012 PA 300 violated the Contracts Clauses:

---

[20] We are not bound to interpret these provisions coextensively, but we may in particular situations be persuaded to do so. See *In re Certified Question*, 447 Mich 765, 776 n 13; 527 NW2d 468 (1994).

In contrast to the scheme established under 2010 PA 75, which was deemed unconstitutional in [*AFT Mich I*], employee contributions under 2012 PA 300 are now voluntary. A member may now choose to either continue to participate in the retiree healthcare program and contribute 3% of his or her salary to do so, or the member may simply opt out of the program altogether. . . . Thus, the constitutional infirmities found in [*AFT Mich I*] have now been cured. [*AFT Mich II*, 303 Mich App at 673.]

We agree with the Court of Appeals' conclusion in *AFT Mich II*. There can be no impairment of a contract when the complaining party can freely avoid the alleged impairment altogether. Under MCL 38.1391a(5), public school employees who do not wish to participate in the retiree healthcare program can simply opt out and instead contribute money into their Tier 2 accounts. By opting out, the employees guarantee that the state will never receive their 3% contributions and that they will be paid the full amount of their bargained-for salaries. The 2012 PA 300 retiree healthcare modifications thus do not impair any employment contracts; rather, the act affords public school employees the option to choose between two potential retirement benefits. The underlying employment contracts between public school employees and employer school districts are unaffected by this exercise of choice.[21]

---

[21] The employment contracts of public school employees who opt out of the retiree healthcare program have not also been impaired by the loss of those benefits. This Court held in *Studier*, 472 Mich at 653-655, that the Michigan Constitution does not protect healthcare benefits. See note 11 of this opinion. Only "accrued financial benefits" are protected, and healthcare benefits are not "financial" and cannot be "accrued." *Studier*, 472 Mich at 653-655. Plaintiffs themselves acknowledge that public school employees have no contractual right (or any other right) to receive retiree healthcare benefits, stating that with respect to those benefits, the employees are "promised nothing." Therefore, public school employees who elect to forgo retiree healthcare benefits have not been harmed in any legally cognizable manner. Those employees continue to receive their bargained-for salaries, and they have not obtained certain benefits-- retiree healthcare benefits-- that they never had any legal right or entitlement to receive in the first place.

## 2. PENSION BENEFITS

Plaintiffs also argue that 2012 PA 300 impairs separate contracts between the state and public school employees guaranteeing the latter the opportunity to accrue pension benefits at a specific rate.[22] We reject this argument as well.

A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Detroit Trust Co v Struggles*, 289 Mich 595, 599; 286 NW 844 (1939). The party seeking to enforce a contract bears the burden of proving that the contract exists. *Hammel v Foor*, 359 Mich 392, 400; 102 NW2d 196 (1960). Contracts necessarily contain promises: a contract may consist of a mutual exchange of promises, *Rowe v Montgomery Ward & Co, Inc*, 437 Mich 627, 672-673; 473 NW2d 268 (1991) (opinion by BOYLE, J,), or the performance of a service in exchange for a promise, *Certified Question*, 432 Mich 438, 446; 443 NW2d 112 (1989).

A contract for employment is typically formed when the employee accepts the employer's promised terms of employment through performance. *Toussaint v Blue Cross*

---

[22] Plaintiffs have argued that 2012 PA 300 has impaired two different classes of contracts. The first are employment contracts between public school employees and their employer school districts, addressed in Part IV(B)(1) of this opinion. The second are contracts that plaintiffs argue exist between the state and public school employees guaranteeing the latter the right to accrue pension benefits at a certain rate. While individual offers of public school employment are made by employer school districts, all public school employees receive retirement benefits directly from the state through the MPSERS. For this reason, any contractual rights to future pension benefits would necessarily be found in contracts between public school employees and the state, and not in employment contracts between the employees and their employer school districts. However, for the reasons described subsequently, we find that no such contracts exist.

*& Blue Shield of Mich*, 408 Mich 579, 630-631; 292 NW2d 880 (1980) (separate opinion by RYAN, J.). "The employer's promise constitutes, in essence, the terms of the employment agreement . . . ." *Id.* The terms of an employment contract regarding compensation must be express promises, either oral or written; an employer's policy statements may not form the basis for any rights to specific forms or amounts of compensation. *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 528-531; 473 NW2d 652 (1991).

2012 PA 300 requires all current public school employees to increase the amount of their pension contributions in order to continue accruing pension benefits, calculated using a 1.5% multiplier. Members of the Basic Plan must now contribute 4% of their salaries, and members of the MIP must now contribute 7%. These changes are codified in MCL 38.1343g(1):

> Beginning on the transition date and ending upon the member's termination of employment or attainment date, as applicable under [MCL 38.1359(1)], each member who made the election under [MCL 38.1359(1) to continue accruing pension benefits using the 1.5% multiplier] shall contribute an amount equal to a percentage of his or her compensation to the reserve for employee contributions or to the member investment plan as set forth in subdivision (a) or (b), as applicable, to provide for the amount of retirement allowance that is calculated only on the credited service accrued and compensation for that member on or after the transition date. Subject to subsection (2), the member shall not contribute any amount under this subsection for any years of credited service accrued or compensation before the transition date. Subject to subsection (2), the amount to be contributed under this subsection is as follows:
>
> (a) For a member who does not contribute to the member investment plan as of September 3, 2012, 4% of compensation to the reserve for employee contributions.

37

(b) For a member who does contribute to the member investment plan as of September 3, 2012, 7% of compensation to the member investment plan.

The increased salary contributions under MCL 38.1343g are not mandatory; public school employees are given a choice, described in MCL 38.1384b:

(1) Beginning February 1, 2013, the calculation of a retirement allowance under this act for a member who did not make the election under [MCL 38.1359(1) to pay the additional contributions under MCL 38.1343g] and who made or is considered to have made the alternative election under [MCL 38.1359(2)(a) to continue accruing pension benefits after the transition date] shall include only the following items of credited service, as applicable, multiplied by 1.5% of final average compensation as provided in [MCL 38.1384]:

(a) The years and fraction of a year of credited service accrued to that member before the transition date.

* * *

(2) Beginning February 1, 2013, the calculation of a retirement allowance under this act for a member described in subsection (1) shall also include the following items of credited service, as applicable, multiplied by 1.25% of final average compensation:

(a) The years and fraction of a year of credited service accrued to that member on and after the transition date.

* * *

(3) Beginning February 1, 2013, the calculation of a retirement allowance under this act for a member who did not make the election under [MCL 38.1359(1) to pay the additional contributions under MCL 38.1343g] and who made the alternative election under [MCL 38.1359(2)(b) to cease accruing pension benefits and contribute to a Tier 2 account] shall include only the following items of credited service, as applicable, multiplied by 1.5% of final average compensation as provided in [MCL 38.1384]:

(a) The years and fraction of a year of credited service accrued to that member before the transition date.

* * *

38

(4) Beginning February 1, 2013, the calculation of a retirement allowance under this act for a member described in subsection (3) shall not include any year or fraction of a year of service performed by that member on and after the transition date or any service credit that is purchased by that member after February 1, 2013, except as provided in subsection (3)(c). Beginning with the first payroll date after the transition date, and ending upon the member's termination of service, the employer of a member described in subsection (3) shall contribute 4% of the member's compensation as defined in [MCL 38.1422(1)] to the member's Tier 2 account. . . .

* * *

(8) The calculation of a retirement allowance under this act for a member who makes the election under [MCL 38.1359(1) to pay the additional contributions under MCL 38.1344g] . . . shall include all items of credited service accrued to that member, regardless of when the service credit was accrued, which shall be multiplied by 1.5% of final average compensation as provided in [MCL 38.1384].[23]

Under MCL 38.1384b, public school employees may choose to pay the additional contributions described in MCL 38.1343g, or they may instead continue making contributions at their current rates. If employees decide to forgo making additional contributions, they will continue accruing pension benefits; however, the benefits that they accrue after the transition date will be calculated using a multiplier of 1.25%. Employees may also elect to forgo accruing additional pension benefits entirely and instead begin making employer-matched contributions to a Tier 2 retirement account. All pension benefits that public school employees have accrued before the effective date of 2012 PA 300 remain unaffected and will be calculated using the 1.5% multiplier.

---

[23] As amended by 2012 PA 359.

Plaintiffs claim that public school employees have a contractual right to continue accruing pension benefits calculated using the 1.5% multiplier. They assert that this right has arisen from statements made in publications prepared by the state Office of Retirement Services explaining to public school employees the retirement benefits they would be eligible to receive. These publications contained statements such as: "Your Retirement Plan provides a benefit that is determined by a formula. The formula is your final average salary times 1.5% (.015) times your total years of service credit . . . ." Michigan Public School Employees' Retirement System, *An Introduction to Your Retirement Plan* (1990 rev), p 7. Plaintiffs claim that these statements are unequivocal promises by the state to provide pension benefits under those specific terms, which were made binding contractual guarantees when public school employees entered into their employment. By enacting 2012 PA 300, plaintiffs argue, the state impaired contracts between itself and the employees by altering the manner in which current employees continue to accrue pension benefits.

In *AFT Mich II*, the Court of Appeals rejected plaintiffs' argument because it found that no contracts existed between the state and public school employees creating rights to future pension benefits:

> The Court of Claims did not err by concluding that the [publications] did not form an enforceable contract. The pamphlets and brochures were simply an informational explanation of the then existing formula; the state was not bound, in perpetuity, by the contents of those publications. [*AFT Mich II*, 303 Mich App at 662.]

40

We agree with the Court of Appeals. Plaintiffs' argument fails because they have not shown that enforceable contracts concerning future pension benefits exist between the employees and the state.[24] This is so for two reasons.

First, plaintiffs cannot demonstrate that the state actually made any promises. Every publication that plaintiffs cite to demonstrate the existence of explicit promises contains a clear *disclaimer* notifying the reader that public school employee retirement benefits are governed by the Retirement Act, and that the act will prevail if a conflict arises between the act and the publications. Some disclaimers unambiguously state that the Legislature may alter the pension benefits. For example, the publication issued in 1990 contained the following language:

DISCLAIMER

This booklet was written as an introduction to your retirement plan. You should find it very helpful in the early stages of your planning for

---

[24] In *AFT Mich II*, plaintiffs argued before the Court of Appeals that public school employees had contractual rights to *future* pension benefits on the basis of Const 1963, art 9, § 24, which states:

The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

This argument was properly rejected by the Court of Appeals in *AFT Mich II* on the basis of this Court's holding in *Studier* that Const 1963, art 9, § 24 protects only *accrued*, or *earned*, pension benefits. *AFT Mich II*, 303 Mich App at 666-667, 670, citing *Studier*, 472 Mich at 654-658. The form or availability of *future* pension benefits for state employees is not governed by Const 1963, art 9, § 24.

41

retirement. It is designed to answer commonly asked questions in a simple and easy to understand style. However, information in this booklet is not a substitute for the law. If differences of interpretation occur, the law governs. *The law may change at any time altering information in this booklet.* [*Your Retirement Plan*, p ii (emphasis added).]

Another publication, issued in 1997, included the following in its introduction:

Remember, this book is a summary of the main features of the plan and not a complete description. The operation of the plan is controlled by the Michigan Public School Employees Retirement Act (Public Act 300 of 1980, as amended). *If the provisions of the Act conflict with this summary, the Act controls.* [Michigan Public School Employees' Retirement System, Retirement Guidelines (May 1997), p 3 (emphasis added).]

As the Court of Appeals correctly concluded, these disclaimers demonstrate that the publications are merely instructional materials designed to generally explain the retirement benefits available at the time of publication. A person could not read these disclaimers and reasonably believe that the state was legally obligating itself to provide public school employees pension benefits exactly as described in the publications for the duration of their careers, notwithstanding any altered fiscal circumstances of the state or any altered policy perspectives on the part of the lawmaking branch of the state. The disclaimers are not, as plaintiffs characterize them, "vacuous" and "devoid of substance and meaning." On the contrary, their meaning is plain-- retirement benefits are controlled by the law in effect at the time and not by any statements made in ephemeral publications.

Second, assuming arguendo that plaintiffs could demonstrate that the publications *did* make express promises, plaintiffs have failed to show that these promises could be enforced against the state. "Public officers have and can exercise only such powers as are conferred on them by law, and a State is not bound by contracts made on its behalf by its

42

officers or agents without previous authority conferred by statute or the Constitution." *Roxborough v Mich Unemployment Compensation Comm*, 309 Mich 505, 510; 15 NW2d 724 (1944) (quotation marks and citation omitted). Individuals dealing with public officers are charged with knowledge of the limits of the officers' authority, and officers cannot act for the state without the express power to do so.[25] Therefore, even if the publications contained express promises of future benefits, in order to form a contract the promises would still need to have been made by a promisor with the legal authority to bind the state in such a matter.

The publications at issue were created by the Office of Retirement Services. Retirement benefits for public school employees are governed by the Retirement Act. Nothing in the Retirement Act confers on the Office of Retirement Services the power to contractually bind the state to provide certain retirement benefits, and plaintiffs have cited no such authority. Plaintiffs treat the state as though it were a single entity, but in reality it is a complex amalgamation of various branches, agencies, offices, and individual agents, from the Legislature to tens of thousands of civil servants working in cities and counties across Michigan. The actions or statements of a single office or individual cannot reasonably be held to bind the entire state absent some clear authority

---

[25] See *Roxborough*, 309 Mich at 511 (holding that the public employee plaintiff was charged with knowledge of the statutory limitation on the Governor's authority to bind the state to pay the employee a fixed annual salary). See also *Martin v Secretary of State*, 482 Mich 956, 957 (2008) (MARKMAN, J., concurring) ("There cannot be as many laws as there are public servants who dispense guidance or advice on the meaning of the law. Rather, such guidance or advice must always be understood as subordinate to the law actually enacted by the elected representatives of the people.").

on the part of the particular actor to do so; otherwise, the state could be liable for innumerable and inconsistent ultra vires acts, rendering effective and efficient government impossible. Accordingly, even if the statements contained in the publications *could* reasonably be interpreted as constituting promises for future pension benefits, these promises would nonetheless have been made by a public actor lacking the power to bind the state. Public school employees are charged with knowing the limits of the Office of Retirement Services' power, *Roxborough*, 309 Mich at 511, and cannot rely on statements in publications as the source of contractual rights. Public school employees accordingly possess no contractual rights to continue accruing pension benefits, and as a result, plaintiffs' claim that 2012 PA 300 unconstitutionally impairs contractual rights to future pension benefits lacks merit.[26]

---

[26] Although public school employees have no contractual right to accrue future pension benefits, they do possess a contractual right to receive the pension benefits they have already earned. Const 1963, art 9, § 24 protects "accrued financial benefits" of public pension plans by making them contractual obligations of the state. As previously explained, this Court has interpreted this provision to include only those pension benefits that public employees have earned through their service to date; in other words, it only protects pension benefits " 'arising on account of service rendered in each fiscal year'. . . ." *Studier*, 472 Mich at 654-655, quoting Const 1963, art 9, § 24. Because 2012 PA 300 on its face does not diminish accrued pension benefits, it does not contravene Const 1963, art 9, § 24. However, we do recognize, as amicus curiae Michigan Education Association (MEA) has asserted, that it is an entirely different analysis under Const 1963, art 9, § 24 if any of the funds generated by the salary levy under MCL 38.1343g are used to fund pension benefits *accrued* before 2012 PA 300 took effect. While the state has an obligation to fully fund its pension liabilities, whether it may do this by requiring employees to assist in paying for pension benefits that they have already earned is a matter not before this Court today and is therefore neither addressed nor resolved. Although the MEA has raised this concern and was initially a plaintiff in the present litigation, the MEA chose not to appeal the Court of Appeals' ruling in *AFT Mich II* and has instead submitted a brief as amicus curiae.

44

## C. "SUBSTANTIVE" DUE PROCESS

*AFT Mich I* held that 2010 PA 75 violated the "substantive" due process guarantees of Const 1963, art 1, § 17 and US Const, Am XIV, § 1. *AFT Mich I*, 297 Mich App at 621. Plaintiffs continue to argue that the modifications made to the retiree healthcare benefit plan infringe public school employees' "substantive" due process rights. We once more disagree. Without offering any pronouncements regarding the constitutionality of 2010 PA 75, we conclude that 2012 PA 300 does not infringe any "substantive" due process rights that public school employees may possess.

The Michigan and United States Constitutions forbid the state from depriving any person of life, liberty, or property without due process of law. Const 1963, art 1, § 17 provides:

> No person shall be . . . deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.

The Fourteenth Amendment provides:

> No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . . [US Const, Am XIV, § 1.]

Although these provisions are often interpreted coextensively,[27] Const 1963, art 1, § 17 may, in particular circumstances, afford protections greater than or distinct from those offered by US Const, Am XIV, § 1.[28] However, as previously noted, plaintiffs have not

---

[27] See, e.g., *People v Sierb*, 456 Mich 519, 523; 581 NW2d 219 (1998).

[28] The portions of Const 1963, art 1, § 17 and US Const, Am XIV addressing due process are worded differently, so they may grant disparate levels of protection. This Court has,

argued that Const 1963, art 1, § 17 should be interpreted any differently than US Const, Am XIV, § 1 in the instant case, so we will not seek to determine otherwise.

This Court has stated that the term "due process" encompasses not only procedural protections, but also contains a "substantive" component that protects individuals against "the arbitrary exercise of governmental power." *Bonner v City of Brighton*, 495 Mich 209, 223-224; 848 NW2d 380 (2014). If a challenged law does not infringe any "fundamental rights"-- the substantive liberties that are deemed "implicit in the concept of ordered liberty"[29]-- this Court has stated that to prevail on a claim of a violation of "substantive" due process, the plaintiff must prove that the challenged law is not "reasonably related to a legitimate governmental interest." *Id*. at 227.

Plaintiffs contend that 2012 PA 300 violates "substantive" due process because current employees contribute money to fund current retirees' healthcare benefits absent any guarantee that current employees themselves will ever receive retiree healthcare benefits. Plaintiffs point out that public school employees are required to contribute to either the retiree healthcare fund or a Tier 2 account. Because these employees lack contractual rights to any specific future benefits, plaintiffs argue that 2012 PA 300 is unconstitutional because the Legislature might attempt in the future to modify the retiree healthcare system or the separate retirement allowance provided by MCL 38.1391a(8).

---

on occasion, applied distinctive due process protections under Const 1963, art 1, § 17 broader than have been afforded under US Const, Am XIV. See, e.g., *Delta Charter Twp v Dinolfo*, 419 Mich 253, 276 n 7; 351 NW2d 831 (1984).

[29] *Phillips v Mirac, Inc*, 470 Mich 415, 434; 685 NW2d 174 (2004) (quotation marks and citations omitted).

By scaling back retiree healthcare coverage or reducing the matching employer contributions to the Tier 2 accounts, the Legislature could diminish the value of whatever option public school employees select. In essence, plaintiffs posit, employees have been compelled to make an irrevocable decision without any guarantee that their chosen benefits will not be diminished or eliminated at some time in the future.

In assessing plaintiffs' "substantive" due process claim, the Court of Appeals in *AFT Mich II* held that the act does not violate "substantive" due process guarantees:

> The state, in enacting 2012 PA 300, has set forth a legitimate governmental purpose: to help fund retiree healthcare benefits while ensuring the continued financial stability of public schools. It is undisputed that in recent years public schools have been required to pay higher fees for the healthcare of retirees and their dependents. Healthcare costs are expected to continue to rise in the future. By seeking voluntary participation from members, the statute rationally relates to the legitimate governmental purpose of maintaining healthcare benefits for retirees while easing financial pressures on public schools. [*AFT Mich II*, 303 Mich App at 676.]

We agree with the analysis of the Court of Appeals. Plaintiffs have not suggested that 2012 PA 300 infringes any fundamental rights, so the pertinent test for 2012 PA 300 under this Court's "substantive" due process precedents is whether the law is reasonably related to a legitimate governmental purpose. We find this test to be fully satisfied. The state may reasonably request that public school employees assist in funding a retiree healthcare benefit system to which they belong. The state's purpose advanced by the challenged portions of 2012 PA 300-- implementing a fiscally responsible system by which to fund public school employees' retiree healthcare--- is unquestionably legitimate. It is entirely proper for the state to seek the continuation of an important retirement benefit for its public school employees while simultaneously balancing and limiting a

47

strained public budget.[30] The means used by the state-- the retiree healthcare

modifications made by 2012 PA 300-- are also reasonably related to this purpose. It is

altogether reasonable for the state to choose to maintain retiree healthcare benefits for all

of its current public school retirees, and it is equally reasonable for the state to choose to

maintain this program for current public school employees. Moreover, because the

Legislature has deemed it fiscally untenable for the state to place the entire burden of

providing these benefits on the taxpayer, it is also reasonable that the state would choose

to have current public school employees assist in contributing to the costs of this

program. If the state requires additional financial support to maintain the public school

employees' retiree healthcare system, which class of persons is more appropriate to assist

in maintaining the fiscal integrity of this program than the participants themselves? We

do not believe that the state or federal Constitutions require Michigan taxpayers to fund

the entire cost of a retirement benefit for a discrete group of public employees. The state

is not generally constrained from modifying its own employee benefits programs to

accommodate its fiscal needs.

---

[30] At the close of the 2010 fiscal year, the MPSERS was underfunded by an estimated $45.2 billion. Of that amount, the retiree healthcare benefits program accounted for approximately $27.6 billion in unfunded liability. Michigan Public School Employees' Retirement System, *Comprehensive Annual Financial Report for the Fiscal Year Ended September 30, 2011* (January 20, 2012), p 34. Between 2010 and 2011, the cost of providing retiree healthcare benefits increased more than 45%, from $705 million to more than $1 billion. *Id*. at 30. It was hardly unreasonable for the state to have concluded at the time that the MPSERS was in need of reform and modification.

We recognize that some employees might be dissatisfied if and when, and for whatever reason, they ultimately fail to qualify for retiree healthcare after contributing to fund the retiree healthcare of others. However, to prevail on a "substantive" due process claim, plaintiffs must surmount the exceedingly high hurdle of demonstrating that the law is altogether *unreasonable*, and they have completely failed to do so here. These employees fully recognized that the possibility of not qualifying for retiree healthcare benefits existed when they initially opted into the retiree healthcare program. There is nothing arbitrary or unreasonable about the choice placed before public school employees by 2012 PA 300.

We are also unpersuaded by plaintiffs' concerns about the possibility of subsequent modifications to either the retirement healthcare benefit program or the MCL 38.1391a(8) separate retirement allowance. This Court assesses the constitutionality of enacted legislation.[31] None can predict with certainty the laws that may be enacted months or years in the future. If the Legislature does indeed attempt to modify the current retiree healthcare system in a manner that plaintiffs believe to be improper, they may assert a separate challenge at that time. We will not speculate at this

___

[31] As United States Supreme Court Justice Oliver Wendell Holmes explained more than a century ago, the function of judicial review is to apply and evaluate *current* laws, stating in *Prentis v Atlantic Coast Line Co*, 211 US 210, 226; 29 S Ct 67; 53 L Ed 150 (1908):

> A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.

49

juncture about the possibility or substance of future legal changes. 2012 PA 300 is the only law challenged in this case, and we conclude that it comports with constitutional guarantees of "substantive" due process.

## V. CONCLUSION

On the basis of the preceding analysis, we conclude that plaintiffs have failed to demonstrate that 2012 PA 300 takes private property without providing just compensation in violation of Const 1963, art 10, § 2 or US Const, Ams V and XIV; that it impairs the obligation of contracts in violation of Const 1963, art 1, § 10 or US Const, art I, § 10, cl 1; or that it violates the guarantee of due process found in Const 1963, art 1, § 17 or US Const, Am XIV, § 1. Absent any contractual guarantees to the contrary, the state may prospectively adjust the compensation of its employees without breaching either the state or federal Constitutions. Because plaintiffs have failed to demonstrate that 2012 PA 300 restructures the retirement benefits offered to public school employees in an unconstitutional manner, we affirm the judgment of the Court of Appeals.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

BERNSTEIN, J., took no part in the decision of this case.

50