# STATE OF MICHIGAN

# COURT OF APPEALS

In re SALLY G. ROTH REVOCABLE TRUST.

SALLY ROTH DETAR and PAUL ROTH,

      Appellants,

v

SHERRY ROTH-JONES O'CONNOR,

      Appellee,

and

ANTHONY R. WITTBRODT, as Trustee of the
SALLY G. ROTH REVOCABLE TRUST,

      Other Party.

UNPUBLISHED
October 23, 2018

No. 341123
Antrim Probate Court
LC No. 15-013063-TV

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Trustee, Anthony R. Wittbrodt, filed a third amended petition for instructions that sought direction from the probate court regarding a partnership's sale of lakefront real property for which there were multiple interested purchasers. The probate court found that a contract for the purchase of the property had been formed between appellee, Sherry Roth-Jones O'Connor, and Wittbrodt, acting on behalf of the partnership as a co-general partner. The probate court ordered specific performance of the contract, authorizing Wittbrodt to sell the property to appellee. Appellants, Sally Roth DeTar and Paul Roth, although not personally interested in purchasing the property, took the position that there was no contract with appellee and that Wittbrodt was required to accept a higher offer for the property that had been presented. Appellants appeal as of right, and we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Louis and Sally Roth (the Roths), husband and wife and long deceased, owned three parcels of property on Torch Lake, and this case and appeal concerns only one of those parcels, which is a vacant lot with 29 feet of frontage on the lake (the property). The Roths had several

-1-

children, including a daughter, our appellee. They also had a son who has passed away, and his wife was Mary Katherine Roth (MKR). Additionally, the Roths had another son who died, and he had three children, two of whom are appellants, along with their sister Catherine G. Roth. These five individuals, appellee (Roths' daughter), MKR (Roths' daughter-in-law), appellants (Roths' grandchildren), and Catherine Roth (Roths' grandchild), are beneficiaries entitled to share in the proceeds from the sale of the property.

Sally Roth survived her husband Louis, and she created the Sally G. Roth Revocable Trust (the trust) and the Torch Lake Properties Limited Partnership (the partnership).[1] Under the terms of the trust, Sally Roth was the trustee, and her appellee daughter and one of the now-deceased sons were named co-successor trustees of the trust. Under the partnership agreement, Sally Roth, as the trustee of her trust, was named the sole general partner of the partnership, with the trust's successor trustees to fill that role of general partner after Sally's death. The partnership agreement made other family members limited partners. The partnership owned the property. Sally Roth died in 2000, rendering the trust irrevocable. Given her brother's death, appellee became the sole trustee of the trust and the sole general partner of the partnership.

The beneficiaries of the trust are as follows: appellee—1/3 interest; MKR—1/3 interest; appellant Sally Roth DeTar—1/9 interest; appellant Paul Roth—1/9 interest; and Catherine G. Roth—1/9 interest. Stated otherwise, the Roths' daughter, appellee, holds a 1/3 interest, their daughter-in-law, MKR, holds a 1/3 interest, and the Roths' three grandchildren hold the last 1/3 interest, divided three ways. With respect to the partnership, the five beneficiaries are limited partners, except for appellee, who was made the sole general partner upon her mother's death given her status as the successor trustee of the trust. The interests of the five beneficiary partners in the partnership, as measured by percentages, equal their respective interests as beneficiaries under the trust. Therefore, effectively, because the partnership owns the property, the respective fractional interests in the property match the fractional interests of the five individuals in the partnership and trust.

In September 2015, appellants filed a petition to remove appellee as trustee, alleging that she was unfit to serve as trustee, that she failed to provide accountings, that she failed to protect trust property,[2] that she failed to provide information regarding the trust, and that appellee violated her fiduciary duties by engaging in self-dealing and other matters that gave rise to conflicts of interest. There were adjournments to allow for settlement negotiations, and in a scheduling order, the petition was set for trial in December 2016. An order extending the period of discovery was entered, and the trial date was bumped to January 2017. A subsequent stipulated order extending dates provided additional time for discovery and pushed the trial date to April 2017 or later. In February 2017, appellants filed a motion for summary disposition on

---

[1] As expressly set forth in the trust and the partnership agreement, they are governed by the laws of Missouri, which is where Sally Roth had been residing.

[2] In addition to the property at issue, the trust and partnership hold various property interests, but we need not discuss them, as they are irrelevant for purposes of resolving this appeal and would only work to create confusion in an already complicated case.

their petition to remove appellee as trustee. In response, appellee filed her own motion for summary disposition in March 2017.

On March 15, 2017, the parties attended a probate court hearing on appellants' motion for summary disposition. At the start of the hearing, the court announced its understanding that a settlement had been reached. The settlement agreement placed on the record indicated that appellee would step down as the trustee, that attorney Anthony R. Wittbrodt would be appointed successor trustee, that, for purposes of the partnership, appellee would remain as a general partner, but doing so as a co-general partner with Wittbrodt, and that if there were any disputes between appellee and Wittbrodt relative to activities of the partnership, the probate court would resolve the matter.[3] Attorney for appellants indicated that the property would be listed for sale by appellee and Wittbrodt at fair market value, while allowing any one of the beneficiaries or combination of beneficiaries to buy the property "at the listing price minus the brokerage commission." Attorney for appellee then stated, "I think that sums it up."

In a "written agreement" signed by appellee and both appellants but not their attorneys,[4] which agreement provided that it was made "as of March 15, 2017," the agreement sets forth several of the provisions that were stipulated to at the hearing on March 15, 2017. But it also stated that the sale of the property was to be "for the best available terms within a reasonable time." The written agreement further provided:

> 6. Beneficiaries of the Trust and limited partners of the Partnership may purchase all of said real property . . . for the amount of the initial listing price minus whatever real estate commission would be payable in a sale to someone other than a beneficiary or limited partner; if two or more beneficiaries or limited partners compete with one another to make such a purchase, the successor trustee [Wittbrodt] shall promptly auction such property to the highest bidder amongst the competitors in order to maximize the sales proceeds. Therefore, any listing agreement with any broker shall exclude compensation to a broker for a sale to one or more beneficiaries.
>
> * * *
>
> 9. To the extent that the foregoing alters or supplements the oral agreement placed on the record by the parties in open court on March 15, 2017 in the Proceeding, this Agreement supersedes same. . . . This Agreement may not be modified except by a writing subscribed by the person to be bound.

There had been no mention of a highest bidder or auction at the hearing on March 15, 2017.

---

[3] The parties noted that Wittbrodt had not yet been approached about the matter, and they discussed steps that would be taken to choose an alternate fiduciary should Wittbrodt decline to accept the position of trustee and co-general counsel; however, Wittbrodt later did accept the roles, perhaps to his ultimate chagrin given the events that followed.

[4] The signatures are not dated, and MKR and Catherine Roth did not sign the written agreement.

In a motion received by the probate court on April 27, 2017, appellants sought to enforce the March 15, 2017 settlement agreement. In this motion, it is made abundantly clear that the written agreement referenced in the preceding paragraph *had not yet been executed*, as appellants argued that despite repeated and ongoing attempts and negotiations to enter into a written agreement, including the sending of proposed and draft agreements, appellee would not finalize an agreement in writing. In a stipulated order entered by the probate court on May 5, 2017, regarding the March 15, 2017 settlement, appellee stepped down as the trustee, Wittbrodt became the trustee, appellee and Wittbrodt were named as co-general partners of the partnership, and any disagreement between the co-general partners was to be resolved by the court. Relevant here, the stipulated order further provided:

> Anthony Wittbrodt, Esq. will select whatever appraiser or broker he wishes and list for sale at fair market value . . . the real property owned by the Partnership; however, any brokerage agreement will exclude a commission for a sale to any one, or combination, of the beneficiaries of the Trust, who may buy one or more parcels of said real property at the listing price without a brokerage commission.

There was no language about a highest bidder or any auction. It appears from the stipulated court order, which was signed by counsel for the parties, that counsel for appellants had faxed the stipulated order to the probate court on May 4, 2017, which signed it the next day. In appellants' brief on appeal, they contend that the written agreement containing the highest-bidder and auction language had been executed by the parties themselves on May 4, 2017. In appellee's brief on appeal, she maintains that the stipulated court order was entered on March 15, 2017. Given our review of the record, this is a blatant factual mischaracterization of the record. While the stipulated court order concerned the settlement placed on the record on March 15, 2017, the order itself is dated and was entered by the probate court on May 5, 2017. Appellee further contends in her appellate brief that the stipulated court order and written settlement agreement were contemporaneously executed and "were dated . . . to tie the two documents together."

In July 2017, an appraisal of the property was prepared, and the property was valued at $200,000. On August 2, 2017, Wittbrodt emailed counsel for the parties, stating that he had reviewed the stipulated court order, that he was advising a realtor to put the property up for sale for the appraised value of $200,000, that if any beneficiary wished to make an offer, the beneficiary should go through his or her attorney, and that appellee "wants to make an offer on the [property] and should not go through me." In response that same day, counsel for appellants emailed Wittbrodt, indicating that he agreed with Wittbrodt's interpretation of the stipulated court order, that "[n]o one has an option or right to first refusal to buy any parcel," and that counsel knew "of an independent party who intends to make an offer."

A listing agreement with the realtor was executed by Wittbrodt, as co-general partner of the partnership. The listing period commenced on August 3, 2017, and the property was listed at $200,000 per the appraisal. On August 3, 2017, an offer was made by an outside party, Michele Osterfeld, at the asking price of $200,000. The offer was expressly scheduled to expire at 5:30 p.m. on August 4, 2017, or upon revocation by Osterfeld, whichever was earliest.

On August 4, 2017, at 11:29 a.m., Wittbrodt emailed counsel for the parties, stating that he had received an offer for the property and that "if any of your clients want to submit a bid, please do so today before 5:30." Responding to Wittbrodt's email at 11:41 a.m. on August 4th,[5] counsel for appellants asked for more time because he was on vacation until August 7th. Wittbrodt then emailed appellants' attorney at 12:02 p.m. on August 4th, asking counsel whether one of his clients "want[ed] to make an offer?" At 1:28 p.m. on August 4th, Wittbrodt emailed the parties' attorneys, indicating, "Advising you both that I intend to accept the offer that expires today @ 5:30." At 1:41 p.m. on August 4th, Wittbrodt emailed counsel for the parties, observing that he had just spoken to appellee's attorney and that the attorney informed Wittbrodt that appellee would be matching the terms of Osterfeld's offer and submitting an offer later that day. At 2:06 p.m. on August 4th, Wittbrodt emailed appellee's attorney, stating that Wittbrodt assumed something in writing would be forthcoming, with the terms to be "$200K, 30 days closing, no conditions, $5k deposit." At 3:00 p.m. on August 4th, appellee's attorney emailed Wittbrodt, indicating that an offer in the form of a proposed purchase agreement was attached, that it had been executed by appellee, and that a check for $5,000 in earnest money was being sent by appellee directly to Wittbrodt. Appellee's offer for the property, as reflected in the proposed purchase agreement, was $200,001.

At 4:27 p.m. on August 4th, appellants' attorney sent an email to Wittbrodt, which provided that Riding, Inc., was making an offer for the property in an amount equal to $1,000 more than the best offer yet received, not to exceed $210,000, with the purchase price to be paid in cash within 30 days.[6] It does not appear that any written offer was attached to the email. Corporate documents—state forms from the Department of Licensing and Regulatory Affairs and the Department of Commerce—were later produced, showing that Riding, Inc., was a Michigan corporation formed by counsel for appellants as early as 1998 and indicating that counsel had served in roles as resident agent, officer, and president. In other words, it appears that a company controlled by appellants' attorney became a prospective purchaser of the property. In an offer to purchase the property signed by appellants' attorney on August 7th, Riding, Inc., offered $210,000 for the property. Also on August 7th, Wittbrodt sent an email to counsel for the parties and, for the first time, copied it to "Katie Roth," ostensibly a reference to MKR, absent mention of Catherine Roth. Wittbrodt indicated in the email that he had received appellee's $5,000 earnest money deposit and that he had not received a written offer from appellants' attorney's client, which apparently was a reference to Riding, Inc. It is not clear when Wittbrodt received the written offer from Riding, Inc., which, as noted above, was dated August 7th. Wittbrodt concluded his email by stating, "Any discussion as to my thought of a deadline to submit a highest and best offer & I want to confirm from the attorneys that I do have or do not have the power to accept the highest & best offer?"

On August 11th, Wittbrodt filed a petition for instructions in the probate court. Wittbrodt recounted the events that had transpired regarding the property up to that point in time, informing the probate court of the three offers that had been made. Wittbrodt asserted that he consulted

---

[5] All the pertinent dates to be discussed further in this opinion pertain to 2017.

[6] With respect to the slew of emails conveyed on August 2nd and 4th, there is no indication that MKR and Catherine Roth were ever included in the emails.

-5-

with appellee, via her attorney, to obtain her consent to accept the highest and best offer, which had been made by Riding, Inc., reminding the court that he needed her consent because of the stipulated court order and her position as co-general partner of the partnership that owned the property. Wittbrodt alleged that appellee, who had made her own offer for the property, refused to consent to a sale to Riding, Inc., thereby triggering the requirement that the court resolve any dispute between the co-general partners.

Before any hearing on Wittbrodt's petition for instructions, MKR made an offer for the property in a proposed buy-sell agreement, offering $220,000 for the property, with a $7,500 earnest money deposit and the $212,500 balance to be paid at closing. On August 21st, Wittbrodt filed a first amended petition for instructions, incorporating MKR's offer and asking the probate court "to resolve the issue as to which offer to accept and/or for other and further relief as may be requested." Thereafter, Riding, Inc., submitted a new offer in the amount of $230,000, with a $7,500 earnest money deposit and the $222,500 balance to be paid at closing. On August 23rd, Wittbrodt filed a second amended petition for instructions, incorporating Riding, Inc.'s latest offer. On August 24th, MKR submitted her second written offer, this time in the amount of $240,000, with a $7,500 earnest money deposit and the $232,500 balance to be paid at closing. This triggered the filing of Wittbrodt's third amended petition for instructions on August 24th, incorporating MKR's latest offer.

On August 28th, appellants filed a response to Wittbrodt's petitions for instructions, arguing that the probate court should order Wittbrodt and appellee, as co-general partners of the partnership, to accept the offer by Riding, Inc. On August 28th, appellee responded to Wittbrodt's petitions for instructions, arguing that the probate court should order Wittbrodt to accept appellee's offer and execute her proposed purchase agreement. Appellee contended that, consistently with the stipulated court order and the written settlement agreement, as soon as appellee agreed to purchase the property at list price, the partnership was bound to sell her the property. Appellee further argued that she was the only *beneficiary* who had submitted an offer within the timeline set by Wittbrodt, i.e., by 5:30 p.m. on August 4th. Appellee additionally maintained that between her offer, Riding, Inc.'s first offer, and the initial offer made by Osterfeld, appellee's offer would generate the most funds for and to be divided by the partnership, considering that a sale to appellee would preclude a commission for the realtor. Finally, appellee argued that Riding, Inc., used material, non-public, and confidential information obtained by appellants' counsel to make an offer that was to the disadvantage of the partnership and counsel's own clients, i.e., appellants.

On September 5th, Wittbrodt filed a response regarding a hearing held on August 29th. The record presented to this Court does not contain a transcript of that particular hearing. Attached to Wittbrodt's response was his affidavit. In the affidavit, Wittbrodt averred that he "did not auction, attempt to auction, or intend to auction the property." Further, Wittbrodt asserted that he "never intended to accept, and never stated to [appellee] or her counsel that [he] would accept, an offer of [appellee] that was equal to or better than the" initial $200,000 offer made by Osterfeld. Additionally, Wittbrodt averred as follows:

> 4. [Appellee's] August 4, 2017 $200,001 offer contained at least one term that was different from terms in that Osterfeld $200,000 offer.

5. If I had received on August 4, 2017 no offer except the Osterfeld $200,000 offer, I might have accepted that offer before it expired at 5:30 p.m. But, I never formed or expressed an intent to accept an offer made on August 4, 2017 if there were multiple offers; I intended to not accept any offer that day if I received that day two or more offers for $200,000 or above, irrespective of real estate commissions.

6. I did not notify [MKR] or Catherine G. Roth, two of the five trust beneficiaries/limited partners, to make an offer before 5:30 p.m. on August 4, 2017; neither made an offer by that time.

7. The best offer I received before 5:30 p.m. on August 4, 2017 was . . . from Riding, Inc. ($201,001 net of real estate commissions); on August 7, 2017 Riding, Inc. increased its offer [to] $210,000 net of real estate commissions.

8. The best offer I have seen to date is from Riding, Inc. ($250,000 net of real estate commissions).[7]

On September 5th, appellants filed a reply brief in opposition to appellee's brief regarding the petitions for instructions. Appellants argued that the stipulated court order trumped any prior agreement between the parties, given that equity owners, MKR and Catherine Roth, were not part of or signatories to any agreement. Appellants further contended that Wittbrodt did not hold any auction, that appellee was not entitled to having her offer accepted, that her offer was not accepted, so there was no contract with her, and that appellee's offer was never the best offer. Appellants maintained that "Wittbrodt should be instructed and [appellee] should be ordered to accept the highest offer available, e.g. Riding, Inc.'s $250,000 offer net of real estate commissions or any higher offer made promptly." Attached to appellants' brief was a supporting affidavit by their attorney who recounted the history of the case, as already alluded to above. He did aver that on August 2nd, he had received information that appellee was telling Wittbrodt that she had a right to purchase the property, and that counsel had communicated with Wittbrodt about the matter, with the two agreeing that appellee had no such right.

On September 5th, MKR, through her own attorney, made her first formal appearance in the proceedings, filing a response to Wittbrodt's third amended petition for instructions. She essentially argued that as to all matters pertaining to the offers, events, and communications of August 4th, they were meaningless, as she had not received notice of anything occurring that day. MKR requested an order approving the sale of the property to her "pursuant to her cash offer of $240,000, the highest offer among the limited partners who hold an option to purchase the subject property under the settlement agreement entered [by the probate court] . . . by order

---

[7] We note that there is no corroborating document in the lower court record regarding this alleged offer by Riding, Inc.

dated March 15, 2017."[8]  In the alternative, MKR asked the court to order that an auction be conducted, with the property going to the highest bidder.

In a reply brief filed by appellee on September 8, 2017, she argued that Wittbrodt had effectively made an offer via his email communications on August 4th, wherein he expressed that an initial offer of $200,000 had been submitted and that he would give the parties until 5:30 p.m. to respond and match the bid.  And appellee accepted Wittbrodt's offer by submitting a matching bid.  Appellee contended that she "accepted the offer of . . . [Wittbrodt] pursuant to" the stipulated court order, the written settlement agreement, and the express conditions set by Wittbrodt.

On October 26th, a hearing was conducted on Wittbrodt's third amended petition for instructions.  No testimony was taken, but the probate court had examined all of the documentary evidence attached to the briefs and the petitions for instructions, encompassing all of the paperwork referred to by us above.  The probate court entertained the parties' arguments[9] and then concluded in extremely cursory fashion absent any elaboration that "there was an offer and acceptance by Mr. Wittbrodt."  Although we are far from certain, it appears that the probate court may have accepted appellee's argument that Wittbrodt had made an offer that appellee had accepted.  And by order dated November 7th, the probate court, providing no clarity whatsoever, indicated that at the hearing, it had "concluded that there was an offer and acceptance between Mr. Wittbrodt and [appellee] on August 4, 2017."  The probate court ordered Wittbrodt to execute the purchase agreement that he had received from appellee on August 4th, and the court ruled that the relief sought by appellants and MKR was denied.

Appellants appeal as of right, and they served the claim of appeal on counsel for appellee and MKR, as well as Wittbrodt directly.  Only appellee has appeared and responded to the appeal.  On appeal, appellants argue, for the first time, that the probate court lacked subject-matter jurisdiction to adjudicate issues regarding the partnership's property.  And even if the probate court had subject-matter jurisdiction, appellants contend that the probate court erred in its ruling, where Wittbrodt held no auction, Wittbrodt made no offer to appellee, Wittbrodt signed nothing to satisfy the statute of frauds, no contract was formed between Wittbrodt and appellee, and where the probate court was confused or misled by appellee.

## II. ANALYSIS

### A. SUBJECT-MATTER JURISDICTION

Appellants first argue that the probate court lacked subject-matter jurisdiction to adjudicate issues regarding the sale of the property, considering that the partnership, and not an

---

[8] Again, there was no court order entered on March 15, 2017; rather, the stipulated court order was signed and entered by the probate court on May 5, 2017, regarding the settlement placed on the record back on March 15, 2017.

[9] The attorneys included counsel for appellants, appellees, MKR, and counsel representing Wittbrodt.

estate or trust, owned the property. This issue was not presented below. However, "[c]hallenges to subject-matter jurisdiction cannot be waived, and a court must entertain such challenges regardless of when they are raised, or even raise such challenges sua sponte." *O'Connell v Dir of Elections*, 316 Mich App 91, 100; 891 NW2d 240 (2016). We review de novo the statutory question whether a court has subject-matter jurisdiction. *Id.* at 97. Subject-matter jurisdiction concerns a court's power to hear and resolve a cause or matter. *Id.* at 100.

Pursuant to MCL 600.841(1)(a), a probate court has jurisdiction "[as] conferred upon it under the estates and protected individuals code [EPIC, MCL 700.1101 *et seq*.]." EPIC provides a probate court with exclusive jurisdiction in regard to matters that concern the removal and appointment of a trustee. MCL 700.1302(b)(i). There is no dispute that the probate court had exclusive jurisdiction with respect to appellants' petition to remove appellee as trustee. And the petition resulted in a settlement that removed appellee as trustee of her mother's trust, that made Wittbrodt successor trustee and co-general partner, that effectively gave Wittbrodt shared authority to sell the property owned by the partnership, and that called upon the probate court to resolve any disagreements between appellee and Wittbrodt in their roles as co-general partners. Thus, the multiple petitions for instructions pursued by Wittbrodt arose out of the settlement, which itself had arisen from the petition to remove appellee as trustee, thereby giving the probate court jurisdiction to adjudicate the third amended petition for instructions.

Furthermore, appellants' argument essentially views the partnership in a vacuum, failing to recognize and appreciate its connection to the trust and the trustee. The partnership agreement, in the opening recitals, provided:

> The partners desire that THE SALLY G. ROTH REVOCABLE LIVING TRUST, SALLY G. ROTH, TRUSTEE, and her successors be the sole General Partner and that all the other Partners be Limited Partners.

And the partnership agreement gave the general partner, i.e., the trustee, full and exclusive power to "sell real . . . property to any person or entity." Thus, although it is true that the partnership owned the property, the trust's trustee, by virtue of the partnership agreement, controlled the sale of partnership property.

The probate court has exclusive subject-matter jurisdiction regarding the "declaration of rights *that involve* a trust [or] trustee," including proceedings to "[d]etermine a question *that arises in* the administration . . . of a trust," or proceedings to "[i]nstruct a trustee and determine *relative to* a trustee the existence or nonexistence of an immunity, power, privilege, duty, or right." MCL 700.1302(b)(v) and (vi) (emphasis added). With respect to Wittbrodt's petitions for instructions, he was asking the probate court to instruct him, as trustee and in his concomitant role as a co-general partner of the partnership, in how to proceed in relationship to the sale of the property. We hold that the scope of MCL 700.1302(b) encompassed the lower court proceedings, providing the probate court with exclusive jurisdiction to entertain and adjudicate Wittbrodt's third amended petition for instructions regarding the sale of partnership property that

was ultimately in the hands of the trustee under the plain language of the partnership agreement.[10] Reversal is unwarranted.

## B. VALIDITY OF THE SALE

Appellants argue that the probate court erred in its ruling, given that Wittbrodt held no auction, that Wittbrodt made no offer to appellee, that Wittbrodt signed nothing to satisfy the statute of frauds, that no contract was formed between Wittbrodt and appellee, and considering that the probate court was confused or misled by appellee. This Court reviews for an abuse of discretion a probate court's dispositional rulings. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). The probate court abuses its discretion when the court makes a determination that falls outside the range of reasonable and principled outcomes. *Id.* Findings of fact by the probate court are reviewed for clear error, and a factual finding is clearly erroneous when we are left with a firm and definite conviction that a mistake was made. *Id.* We review de novo issues of statutory construction addressed by the probate court. *Id.* at 403-404. This Court also reviews de novo issues concerning the proper interpretation of a contract and the legal effect or application of a contract. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

The probate court, in effect, tried Wittbrodt's third amended petition for instructions on documentary evidence provided by the parties. MCR 2.517(A) provides, in relevant part:

> (1) In actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment.

> (2) Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without overelaboration of detail or particularization of facts.

> (3) The court may state the findings and conclusions on the record or include them in a written opinion.

Brevity alone is not fatal to a ruling by a trial court because the court rule does not mandate over-elaboration of details, *Powell v Collias*, 59 Mich App 709, 714; 229 NW2d 897 (1975), but a court must sufficiently articulate the reasons for its decision in order to facilitate appellate review, *Dep't of Transp v Randolph*, 461 Mich 757, 767; 610 NW2d 893 (2000).

Here, the probate court did not make much of an effort to comply with MCR 2.517(A). We cannot even tell with confidence whether the probate court found that appellee made an offer for the property that Wittbrodt accepted or found that Wittbrodt made an offer that appellee had accepted. Additionally, the probate court failed to address several issues presented to the court,

---

[10] We also note that MCL 700.1302(d) provides a probate court with exclusive jurisdiction to order "instructions or directions to a fiduciary that concern an estate within the court's jurisdiction." Wittbrodt was acting as a fiduciary in this case that entailed a trust estate.

including issues concerning notice to MKR and Catherine Roth, the lack of involvement by MKR and Catherine Roth in the written settlement agreement and stipulated court order, and identification of the controlling document or documents in regard to the sale of the property by Wittbrodt—was it the stipulated court order alone or was it the stipulated court order in conjunction with the written settlement agreement. All that being said, we come to the conclusion that the trial court reached the correct result.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[;] [t]o this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). In light of this rule, "[i]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965); see also *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 111; 595 NW2d 832 (1999). Contract formation requires, in part, an offer and acceptance of the offer, and no contract can be formed unless the acceptance is unambiguous and in strict conformance with the offer. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452-453; 733 NW2d 766 (2006). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *Id*.

While we have set forth some of the basic tenets of contract formation, this case is not truly about contract formation; rather, it is about compliance with the stipulated court order and the written settlement agreement, assuming that the written settlement agreement is even enforceable in conjunction with the stipulated court order. The stipulated court order and the written settlement agreement both entitled any of the five beneficiaries to purchase the property at the "listing price" minus the real estate or brokerage commission. Although the written settlement agreement called for an auction and a sale to the highest bidder, this only applied in regard to competing offers between "beneficiaries and limited partners." Appellee, a beneficiary, plainly made an offer to Wittbrodt on August 4th slightly higher than the listing price. The only other offers that day were from *non-beneficiaries* Osterfeld and Riding, Inc., and their status as *non-beneficiaries* made their offers, regardless of the amount, irrelevant, because a beneficiary willing to pay the listing price and beyond had made an offer. Ultimately, the only other beneficiary who made an offer was MKR and, assuming enforceability of the written settlement agreement's highest-bidder and auction language and assuming that MKR's bids way beyond the deadline of 5:30 p.m. on August 4th can be considered because of a notice failure, *MKR has not appealed the probate court's ruling*. We must view that decision as reflecting that MKR no longer wishes to pursue a purchase of the property.

Appellants, neither of whom submitted an offer at any point in time, argue that Wittbrodt never conducted an auction and that, assuming an auction had been conducted, Riding, Inc., was the successful bidder. Given our discussion above, this argument is irrelevant. Auction or no auction, appellee, a beneficiary, submitted an offer of $200,001 for the property that had been listed for $200,000, and considering that MKR has decided not to participate in the appellate litigation, appellee is entitled to purchase the property.

Appellants next argue that Wittbrodt made no offer to appellee. We recognize that the probate court's ruling could be construed as finding that Wittbrodt made an offer to appellee,

which she accepted. We do not believe that Wittbrodt technically made an offer to appellee, but again, this is irrelevant, as appellee plainly made an offer to Wittbrodt for the property. And pursuant to the stipulated court order and/or written settlement agreement, appellee's offer entitled her to purchase the property, *regardless of whether Wittbrodt accepted it or not, considering that he was ultimately legally obligated to accept it in light of the language in the stipulated court order and/or written settlement agreement.*[11] This defeats appellants' next argument that no contract was formed between Wittbrodt and appellee. It simply does not matter whether Wittbrodt did not accept or did not intend to accept appellee's order, as he had a duty to accept it because a beneficiary, appellee, was making an offer for the property in the amount of the listing price and beyond.[12]

Appellants further contend that Wittbrodt signed nothing to satisfy the statute of frauds.[13] Once again, this is not really a contract case or dispute, but rather a case involving compliance with the stipulated court order and/or written settlement agreement. Regardless of whether Wittbrodt executed the purchase agreement containing appellee's offer, he had an obligation and duty to sign it, and the probate court, regardless of its reasoning, was correct in recognizing a contract and ordering specific performance.

Finally, appellants maintain that the probate court "was confused or misled by appellee." Appellants first complain that appellee led the court to believe that Riding, Inc., made no offer before 5:30 p.m. on August 4th. For the reasons discussed above, this argument is irrelevant. Next, appellants complain that appellee misled the probate court to believe that the written settlement agreement was binding, yet Wittbrodt, MKR, and Catherine Roth never signed it. None of these parties are raising challenges on appeal, and we question appellants' standing on the matter; appellants both signed the written settlement agreement. We also note that Catherine Roth never joined her sibling appellants in litigating anything below. Moreover, the stipulated court order, which appellants claim trumps the written settlement agreement, supports the sale of the property to appellee for the reasons explained earlier in this opinion. Appellants assert that the stipulated court order did not "give a limited partner the exclusive right to buy the [p]roperty at the listing price if, as here, there are higher bids." This argument is entirely lacking in merit, where the stipulated court order clearly and unambiguously provided that the trust beneficiaries may buy the property "at the listing price without a brokerage commission." There is no

---

[11] Again, this conclusion is based on us not taking into consideration MKR.

[12] We also note, as discussed earlier, that both Wittbrodt and appellee, as co-general partners of the partnership, had to agree in regard to a sale, and we find it self-evident that appellee was agreeable to her purchase of the property.

[13] MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

language indicating or suggesting that this provision does not apply if bids or offers over the listing price are presented.

Affirmed. Having fully prevailed on appeal, appellee is awarded taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle