*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF MANISTEE COUNTY
TREASURER FOR FORECLOSURE.

---

MANISTEE COUNTY TREASURER,

        Petitioner-Appellee,

v

ANN CULP and CHELSEA KOETTER,

        Respondents-Appellants.

UNPUBLISHED
June 13, 2024

No. 363723
Manistee Circuit Court
LC No. 20-017073-CZ

---

Before: MALDONADO, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

This case involves the proceeds that remained after the tax-foreclosure sales of property formerly owned by respondents, Ann Culp and Chelsea Koetter, and the payment of their delinquent taxes, interest, penalties, and fees. Respondents moved the trial court to distribute the remaining proceeds, and petitioner, Manistee County Treasurer, opposed their motions because respondents had not satisfied the statutory requirement to give timely notice of their intent to claim the proceeds. The trial court denied respondents' motions, and respondents now appeal by delayed leave granted.[1] We affirm.

## I. BACKGROUND

### A. STATUTORY FRAMEWORK

The Michigan Supreme Court held in *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 484; 952 NW2d 434 (2020), that former owners of properties sold at tax-foreclosure sales for more than

---

[1] *In re Petition of Manistee Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered June 20, 2023 (Docket No. 363723).

what was owed in taxes, interests, penalties, and fees have "a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties." This right continues to exist after fee simple title to the properties vested with the foreclosing governmental unit (FGU). The FGU's "retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties under Article 10, § 2 of [Const 1963]," and the former owners were entitled to just compensation in the form of the return of the surplus proceeds. *Id*. at 484-485. When the Court decided *Rafaeli*, the General Property Tax Act (GPTA), MCL 211.1 *et seq*., did not provide a means by which property owners could recover their surplus proceeds.

In response to *Rafaeli*, the Legislature passed 2020 PA 255 and 2020 PA 256, which were given immediate effect on December 22, 2020. These acts purported to "codify and give full effect to the right of a former holder of a legal interest in property to any remaining proceeds resulting from the foreclosure and sale of the property to satisfy delinquent real property taxes under the [GPTA] . . . ." Enacting Section 3 of 2020 PA 255; Enacting Section 3 of 2020 PA 256. At issue in the current appeal is MCL 211.78t, a provision added to the GPTA by 2020 PA 256. Section 78t provides the means for former owners to claim and receive any applicable remaining proceeds from the tax-foreclosure sales of their former properties.

Property owners whose properties sold at tax-foreclosure sales after July 17, 2020, the date the *Rafaeli* decision was issued, and who intend to recover any surplus proceeds from the sale are required to notify the FGU of their intent by submitting a "Notice of Intention to Claim Interest in Foreclosure Sales Proceeds" (Treasury Department Form 5743) by the July 1 immediately following the effective date of the foreclosure of their properties. Form 5743 must be notarized and filed with the FGU "by personal service acknowledged by the FGU or by certified mail, return receipt requested." MCL 211.78t(2). Property owners who satisfy these requirements are "claimants." In the January immediately following the sale or transfer of foreclosed properties, the FGU notifies the claimants about the total amount of remaining proceeds or the amount of shortfall in proceeds, among other things. MCL 211.78t(3)(i). The notice also instructs the claimants that they may file a motion in the circuit court in the foreclosure proceeding to recover any remaining proceeds payable to them. MCL 211.78t(3)(k). Such motion must be filed between February 1 and May 15 of the year immediately following the tax-foreclosure sale. MCL 211.78t(4). At the end of this claim period, the FGU responds by verifying that claimants timely filed Form 5743 and identifying any remaining proceeds.[2] MCL 211.78t(5)(i). The circuit court then conducts a hearing to determine the relative priority of the claimants' interests in any remaining proceeds. After requiring the payment of a sales commission to the FGU of 5% of the amount for which the property was sold, the trial court then "allocate[s] any remaining proceeds based on its determination of priority, and order[s] the FGU to pay the remaining proceeds to

---

[2] Specifically, the FGU files with the circuit court proof of service of the notice that the FGU mailed to claimants in January, along with additional information identifying the property and the details of its sale, including the amount of any remaining proceeds or shortfall in proceeds. MCL 211.78t(5)(i).

claimants in accordance with the trial court's determination." MCL 211.78t(9). The FGU has 21 days to pay the amount ordered by the trial court. MCL 211.78t(10).

## B. PERTINENT FACTS AND PROCEEDINGS

The material facts in this case are not in dispute. Respondents owned real properties in Manistee County and fell behind on their property taxes. Petitioner, acting as the FGU, foreclosed on their properties, effective March 31, 2021. Petitioner sent respondents two notices informing them that their properties may be sold for more than they owed in taxes and associated costs, that they had the right to claim any excess proceeds, and how to exercise that right. Neither respondent conveyed to petitioner their intention to claim any remaining proceeds by submitting Form 5743 by July 1. The properties were sold at auction, and the proceeds were applied to respondents' delinquent property taxes, interests, penalties, and fees. The properties sold for significantly more than respondents owed. Koetter's foreclosed property sold for $106,500, and the proceeds remaining after satisfaction of her tax debt and associated costs were $97,311.60. Culp's foreclosed property sold for $69,500, leaving $62,873.36 in remaining proceeds after satisfaction of her tax debt and associated costs. Respondents filed motions in the circuit court to recover the remaining proceeds, and petitioner opposed the motions because neither respondent had complied with the notice requirements in § 78t(2). After a hearing on the motions, the court took the matter under advisement and ultimately issued an order denying respondents' motions. The court also denied their joint motion for reconsideration. This appeal followed.

## II. ANALYSIS

On appeal, respondents contend that the procedures described in MCL 211.78t are not the exclusive means for recovering surplus proceeds and that petitioner has committed an unconstitutional taking. They also contend that § 78t(2)'s deadline for filing a notice of intent to claim the proceeds is unenforceable and that they were not provided adequate due process. This Court resolved these issues in *In re Petition of Muskegon Co Treasurer for Foreclosure*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 363764). MCR 7.215(C)(2) provides that "[a] published opinion of the Court of Appeals has precedential value under the rule of stare decisis." Accordingly, we must conclude that respondents' claims fail, and we must affirm the trial court's order denying respondents' motions to disburse remaining proceeds.

## A. STANDARDS OF REVIEW

"In reviewing the circuit court's resolution of a motion under MCL 211.78t, this Court reviews factual findings for clear error." *Muskegon Treasurer*, ___ Mich App at ___; slip op at 3. "[T]he interpretation and application of constitutional provisions and statutes" are questions of law subject to de novo review. *Id.* Whether a party has been afforded due process is reviewed de novo. *In re Moroun*, 295 Mich App 312, 331; 814 NW2d 319 (2012). "Whether a specific party has been unjustly enriched is generally a question of fact . . . [but] whether a claim for unjust enrichment can be maintained is a question of law . . . ." *Jackson v Southfield Neighborhood Revitalization Initiative*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361397); slip op at 27-28.

## B. EXCLUSIVITY OF MCL 211.78T

Respondents first argue that MCL 211.78t does not provide the exclusive means of recovering the proceeds remaining from a tax-foreclosure sale after satisfaction of the tax debt and related costs. We disagree.

This Court resolved this issue in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 5, holding that our Legislature intended MCL 211.78t as the exclusive means of recovering proceeds remaining after a tax-foreclosure sale and the satisfaction of the former owner's tax debt. The Legislature is presumed to have intended the meaning it plainly expressed, and in MCL 211.78t(11), the Legislature clearly expressed its intent that "Section 78t is the *exclusive mechanism* for a claimant to claim and receive any applicable remaining proceeds under the laws of this state." *Id*. (quotation marks and citation omitted). "Giving 'exclusive' its plain, ordinary meaning, MCL 8.3a, our Legislature intended MCL 211.78t as the sole mechanism by which a former owner of foreclosed property could obtain any proceeds remaining from the tax-foreclosure sale and satisfaction of the owner's delinquent taxes and associated costs." *Id*.

As did the respondents in *Muskegon Treasurer*, respondents in the present case contend that alternate means of recovering the proceeds that remain after the sale or transfer of their property and the satisfaction of their tax debts and associated costs is suggested by: (1) the difference between *Rafaeli*'s "surplus proceeds" and the statute's "remaining proceeds"; (2) use of the permissive "may" in MCL 211.78t(1); and (3) the fact that "claimants" are a subset of foreclosed property owners. From this, respondents contend that, even if MCL 211.78t is the exclusive means for claimants to recover remaining proceeds if they choose to do so, there still exists alternate means for foreclosed property owners to recover surplus proceeds.

As this Court explained in *Muskegon Treasurer*, to the extent that the respondents were claiming an ambiguity between "remaining proceeds" and "surplus proceeds," this argument was really about whether 2020 PA 256 actually addressed the constitutional infirmity of the prior GPTA; it has "no bearing on whether the Legislature intended its amendment to the GPTA to be the exclusive mechanism for a former property owner to pursue a constitutional claim." *Muskegon Treasurer*, ___ Mich App at ___; slip op at 5. This Court also rejected the respondents' interpretation of the use of "may" in MCL 211.78t(1) as signaling an alternate means of recovering remaining proceeds. Rather, it acknowledges that there are valid reasons why former property owners might exercise their discretion by not submitting Form 5743. Like the respondents in *Muskegon Treasurer*, respondents in the present incorrectly assumed "that the alternative to pursuing a claim under MCL 211.78t was to pursue a claim by some other means—rather, their alternative was not to claim an interest in the foreclosed property in the first place." *Id*.

In short, we are bound by the holding in *Muskegon Treasurer* that the Legislature intended MCL 211.78t as the exclusive mechanism for claiming and recovering remaining proceeds.

C. DUE PROCESS

Respondents next contend that their rights to procedural and substantive due process were violated when petitioner confiscated over $168,000 from them without notice and on the basis of an arbitrary notice deadline. We disagree.

As this Court observed in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 8, due process is "flexible and calls for such procedural protections as the particular situation demands." (Quotation marks, and citation omitted.) Courts generally consider the following three factors to determine what is required by procedural due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Id*., quoting *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976).]

This Court held in *Muskegon Treasurer*, *id*., that "[t]he statutory scheme set up by our Legislature and followed by petitioner satisfies due process." Integral to the conclusion in that case was the fact that the petitioner followed the statutory scheme by providing the respondents with notices that adequately informed them of "their right to claim any excess proceeds and told them how to express their intent to exercise that right." *Id*. Similarly, in this case, petitioner followed the statutory scheme by providing notices containing the required information. The statutory scheme satisfies due process, and petitioner followed the scheme. Therefore, respondents received the process that was due, and their claim of a violation of procedural due process must fail.

Nevertheless, respondents contend that the notices that they received were inadequate because: (1) they were discretionary; and (2) they did not identify the amount of proceeds that remained. Respondents contend that the notices set pursuant to MCL 211.78t(3) were inadequate because they were sent only to foreclosed property owners who complied with the notice deadline in § 78t(2). This Court rejected each of these arguments in *Muskegon Treasurer*. The statutory scheme requires FGUs to send each person with an interest in a forfeited property an explanation of their right to claim remaining proceeds mandated by MCL 211.78i(7). *Muskegon Treasurer*, ___ Mich App at ___; slip op at 8. This information was included in the notices that petitioner sent to respondents after their properties were foreclosed and with ample time to allow respondents to submit Form 5743 by July 1. Respondents' contention that the notices were inadequate because they did not identify the remaining proceeds arises from their faulty interpretation of *Rafaeli* as holding that a former property owner's right to recover remaining proceeds arises only *after* the tax-foreclosure sale when, in fact, "the right to collect excess proceeds existed before the tax-foreclosure sale," even if it was not compensable at that time. *Id*. at ___; slip op at 9.

Lastly, respondents' argument that the MCL 211.78t(3) notices were inadequate because they were sent only to those who complied with § 78t(2) reveals that "what respondents really

want is different, i.e., postsale process." *Id*. at ___; slip op at 8. Like in *Muskegon Treasurer*, respondents advocate for a system in which FGUs inform foreclosed property owners of the results of the tax-foreclosure sale or transfer of their properties and provide a means for them to claim excess proceeds even if they did not timely file Form 5743. See *id*. However, that is not Michigan's system, and "[s]o long as the statutory scheme adopted by our Legislature comports with due process—and MCL 211.78t does—whether such a scheme makes sense or not, or whether a 'better' scheme could be devised, are policy questions for the Legislature, not legal ones for the Judiciary." *Id*. at ___; slip op at 9.

Like this Court did in *Muskegon Treasurer*, we reject respondents' attempt to frame their "arguments in terms of substantive due process." *Id*. Respondents' substantive due-process theory merges with their takings claim under the Fifth and Fourteenth Amendments to the United States Constitution and under Const 1963, art 10, § 2. If "a constitutional claim is covered by a specific constitutional provision the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Id*., quoting *United States v Lanier*, 520 US 259, 272 n 17; 117 S Ct 1219; 137 L Ed 2d 432 (1997) (alteration omitted).

## D. HARSH AND UNREASONABLE CONSEQUENCES

Respondents next argue that trial courts should set aside MCL.211.78t(2)'s July 1 notice deadline because it occurs before their claim for surplus proceeds accrued and because enforcement of the deadline results in harsh-and-unreasonable consequences. This argument was likewise raised and rejected in *Muskegon Treasurer*.

Respondents' argument that the July 1 notice deadline is unreasonable because it occurs before their claim for surplus proceeds has accrued arises from the same misinterpretation of *Rafaeli* that we discussed above. In *Rafaeli*, 505 Mich at 476-477, the Supreme Court held that the right to recover proceeds remaining after the tax-foreclosure sale of property existed under English common law, was "firmly established in the early years of Michigan statehood," and was a common-law right commonly understood to exist by the ratifiers of the Michigan Constitution in 1963. Therefore, as we have already indicated, respondents' right to collect surplus proceeds existed before the tax-foreclosure sale, even if it was not yet a *compensable* claim. See *id*. Accordingly, petitioner's notices were not unreasonable simply because they were sent to respondents before the tax-foreclosure sale.

Respondents argue in their reply brief that the July 1 deadline should be set aside because the consequences for missing it are unreasonably harsh. As explained in *Muskegon Treasurer*, "[t]he 'harsh-and-unreasonable' consequences exception has been applied to statutes of limitations and notice requirements when the consequences of strictly enforcing a time period are so harsh and unreasonable that it effectively divested plaintiffs of the access to the courts intended by grant of the substantive right." *Muskegon Treasurer*, ___ Mich App at ___; slip op at 5-6 (quotation marks omitted). This Court addressed the same argument in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 5-7, and concluded that "[t]he circumstances of this case do not justify application of the harsh-and-unreasonable consequences exception to the statutory notice requirement of MCL 211.78t(2)." Because the relevant circumstances of the present case are identical with those in *Muskegon Treasurer*, we again reject application of the harsh-and-unreasonable consequences exception.

## E. TAKINGS

Next, respondents argue that petitioner's "confiscation" of their surplus proceeds is an unconstitutional taking in violation of Takings Clauses in the federal and state Constitutions. Respondents are incorrect.

The Fifth Amendment to the federal constitution, which applies to the states by operation of the Fourteenth Amendment,[3] prohibits taking private property for public use without just compensation. US Const, Ams V and XIV. Similarly, the Michigan Constitution's Takings Clause prohibits the government from taking private property for public use "without just compensation being first made or secured in a manner prescribed by law." Const 1963, art 10, § 2. The Michigan and Federal Takings Clauses are not coextensive, see *AFT Mich v Michigan*, 497 Mich 197, 217; 866 NW2d 782 (2015), but respondents do not argue that Michigan's provision should be construed more broadly in the context of this case.

Once again, the same argument raised now was considered and rejected in Muskegon Treasurer.

> Petitioner provided respondents with notice that adequately informed them of the steps to take to recover any proceeds that remained after the tax-foreclosure sale of their properties and the satisfaction of their tax debts and associated costs. The first step toward recovery was the minimally burdensome requirement of informing the FGU of the intent to assert a claim for any excess proceeds through the timely submission of Form 5743. Respondents did not take this action. [*Muskegon Treasurer*, ___ Mich App at ___; slip op at 10.]

Therefore, "respondents did not suffer a compensable taking." *Id*.[4]

Respondents argue that petitioner has no legal interest in their surplus proceeds and that 2020 PA 256 does not authorize petitioner to seize funds, nor did it contemplate that petitioner would confiscate the proceeds and keep them indefinitely. Respondents' argument mischaracterizes petitioner's action and overlooks the statutory scheme in MCL 211.78. MCL 211.78m(8) addresses the distribution of proceeds from tax-foreclosure sales. An FGU must deposit money from tax-foreclosure sales into a restricted account, direct the investment of the account, and then use the funds as directed by MCL 211.78m(8)(a) through (i). When properties are sold for an amount at, or greater than, the minimum bid, the FGU must first satisfy the former property owner's tax debt, including any relevant fees incurred by the FGU. MCL 211.78m(8)(a) through (b). The statute then requires the FGU to make payments "to claimants of remaining proceeds for the year ordered under section 78t . . . ." MCL 211.78m(8)(c). In the present case, no payments were ordered under § 78t because respondents did not satisfy the notice requirements

---

[3] See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 9.

[4] Like in *Muskegon Treasurer*, we do not need to address whether the 5% sales commission is a taking "because respondents were never subject to the sales commission, given their failure to make a valid claim in the first place." *Muskegon Treasurer*, ___ Mich App at ___; slip op at 11.

of § 78t(2). Respondents do not identify any statutory provision relevant to the facts of this case that would allow petitioner to distribute proceeds to respondents when they have not complied with § 78t(2). To the extent that petitioner complied with the requirements of § 78m(8), it neither seized nor confiscated respondents' proceeds.

In their reply brief, respondents rely on *Knick v Scott Twp, Pennsylvania*, ___ US ___; 139 S Ct 2162; 204 L Ed 2d 558 (2019), to assert that their right to surplus proceeds is protected by the federal Takings Clause, regardless of state law. They also rely on *Perez v Campbell*, 402 US 637, 652; 91 S Ct 1704; 29 L Ed 2d 233 (1971), to argue that the federal Supremacy Clause preempts those sections of 2020 PA 256 that are interpreted or applied to deny those rights. The flaw in respondents' argument is that they do not have a federal Takings claim, and the Supremacy Clause has no application because the notice requirement in MCL 211.78t does not deprive respondents of their vested, constitutionally protected property right to recover remaining proceeds; rather, it provides a reasonable and minimally burdensome means of exercising that right that passes constitutional muster. See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 11.

## F. UNJUST ENRICHMENT

Lastly, respondents urge this Court to view petitioner's retention of their surplus proceeds as unjust enrichment and either to apply a constructive trust or to order a money judgment. We decline to do either.

Unjust enrichment is a cause of action to correct a party's unjust retention of a benefit owed to another. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). Contrary to respondents' implication, petitioner was not "unjustly enriched." See *id*. Petitioner merely followed the statutory scheme set forth by our Legislature, under which petitioner lacks the discretion to disburse remaining proceeds to foreclosed property owners who did not comply with the notice requirements of MCL 211.78t(2). See MCL 211.78m(8). Moreover, as discussed above, the Legislature made clear that it intended Section 78 to be the exclusive mechanism for recovery of surplus proceeds, and by doing so, it implicitly abrogated equitable remedies established at common law. See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 4.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Kirsten Frank Kelly
/s/ James Robert Redford